OPINION
{¶ 1} Defendant-appellant Nathan L. Vaughn presents this reopened appeal after pleading no contest to his father's murder and being sentenced by the Carroll County Common Pleas Court. The issue before us concerns whether appellant's no contest plea was knowing, voluntary, and intelligent where the trial court led him and his attorney to erroneously believe that he would be able to appeal the court's grant of the state's pretrial motion in limine, which excluded evidence of battered child syndrome. For the following reasons, this case must be reversed and remanded. Specifically, we hold that under the facts and circumstances that exist on the record in this case, appellant's plea was not voluntarily, intelligently, and knowingly entered because the trial court led him and his attorney to believe that its ruling, excluding evidence of battered child syndrome, was appealable after the plea of no contest.
 STATEMENT OF FACTS {¶ 2} On the evening of June 4, 1996, sixteen-year-old appellant used his father's .22 magnum rifle to shoot his father three times. In his taped interview with police the next morning, he said that his dad had been yelling at him just before the shooting. He disclosed that his father kept the loaded rifle in the living room and threatened to shoot him many times in the past. He related past incidents such as his father pulling a thirty foot ladder out from under him, throwing a hammer at him, trying to push him down the stairs, and hitting him numerous times, once with a shovel. He stated that although his father was sitting in a chair at the time of the shooting, he was yelling and "getting madder and madder." He explained that his father did not hit him that day because he shot him first.
 {¶ 3} A psychologist later interviewed appellant for a total of 8.5 hours and spoke with other individuals about appellant. The psychologist's October 8, 1996 report noted that appellant's father subjected him to degrading, aggressive, and hostile actions. He also noted that appellant said his father had been making him work for him the past five years doing things such as building a house, pouring cement, and digging a lake. Although the psychologist concluded that "for the most part" the father did not physically harm appellant, he related that appellant informed him about some of the incidents described to police and a story about his father punching him. The psychologist described appellant as "an emotionally battered child," noting that he was subjected to "years of psychological terrorism" through threats and intimidation. He opined that the shooting was due to the years of damage to appellant's development and resulting inability to find an acceptable means of escape from the intolerable situation. The psychologist concluded that appellant's ability to plan and rationally direct his behavior was so impaired that he acted to survive.
 {¶ 4} Appellant was bound over from the juvenile division to the general division and indicted on one count of aggravated murder with a firearm specification. On December 18, 1996, the state filed a motion in limine seeking to preclude all evidence on battered child syndrome. Appellant countered this motion, and the court heard arguments on the issue. As joint exhibits, the court reviewed the psychologist's report and appellant's statement to police. On February 10, 1997, the court granted the state's motion in a twenty-three page opinion and barred all evidence of self-defense based upon battered child syndrome.
 {¶ 5} The trial court concluded that the evidence did not warrant the defense. The court summarized some facts by stating that the father was a disciplinarian who yelled when appellant did things wrong and had a bad temper. The court noted appellant's statement that he had much hate for his father. The court basically concluded that appellant was not a model child and that corporal punishment and threatening may have been the father's only options for dealing with him. The court declared that construing appellant's claims in the light most favorable to him, his father threw objects and occasionally became physical "but only to the extent of causing some bruises." The court pointed out that the father did not drink alcohol and did not threaten appellant with the weapon. (Although, according to appellant, his father did threaten to shoot him in the past). The court quotes appellant as saying, "I never ever thought he would kill me," but the court omits the remainder of the sentence which continues, "but he always said he would, but I mean, I believe that if he got mad enough, he would. I'll guarantee that."
 {¶ 6} The court distinguished between abused and battered children. The court then stated that appellant was neither physically abused nor battered. The court also concluded that battered child syndrome does not include emotional, mental, or psychological abuse. The court then went through the elements of self-defense and concluded there was no evidence the father was the first aggressor, there was no evidence of an imminent attack, and appellant could have run away as he did the previous summer.
 {¶ 7} In mid-March, the court was informed that a plea agreement had been reached. On April 22, 1997, appellant pled no contest to a reduced charge of murder with a firearm specification. He was sentenced to a three-year term of actual incarceration to be followed by an indefinite term of fifteen years to life in prison. The court also ordered appellant to spend twenty-four hours per year in solitary confinement on the anniversary of his father's death.
 {¶ 8} Timely notice of appeal was filed. In December 1997, we notified counsel to prosecute the appeal or face dismissal of the case. In February 1998, we dismissed the appeal. In May 2001, we construed a pro se motion as an application for reopening, granted the application, and reopened the appeal which was not fully briefed until May 2002. In that appeal, counsel set forth three assignments of error. The first assignment of error alleged that the court erred in excluding evidence of battered child syndrome. The second assignment of error alleged that the court erred in imposing solitary confinement as part of the sentence. The third assignment of error claimed that prior appellate counsel was ineffective for failing to brief these issues and allowing the original appeal to get dismissed.
 {¶ 9} As for the third assignment of error, we noted that the arguments within it were consumed by our analysis in the first two assignments of error. State v. Vaughn, 7th Dist. No. 683, 2002-Ohio-5046, at ¶ 28. This court sustained appellant's second assignment of error and thus modified the sentence to exclude solitary confinement. Id. at ¶ 25. However, we affirmed appellant's conviction after overruling his first assignment of error on the grounds that a ruling to exclude evidence of battered child syndrome is a ruling on a motion in limine rather than a ruling on a motion to suppress. Id. at ¶ 18-20, citing State v. Engle (1996), 74 Ohio St.3d 525, 528-529
(Resnick, J. concurring and receiving four votes). We explained that a ruling on a motion in limine is not appealable after a plea of no contest or guilty as the plea constituted waiver of any error. Id.
 {¶ 10} Appellant filed a timely motion to reopen the appeal based upon ineffective assistance of appellate counsel, urging that appellate counsel should have read the 1996 Engle case and raised the involuntariness of the plea as an assignment of error in the 2001 brief. The potential significance of Engle to appellant's appeal was mentioned by this court in a footnote in appellant's prior appeal where we stated:
 {¶ 11} "We note that the Engle Court reversed on a separate assignment of error which explicitly alleged that the plea was notvoluntary or knowing; the Court found evidence on the record that demonstrated that the defendant, the court, the prosecutor, and defense counsel all believed that the pretrial ruling was preserved for appeal and that appealability `promise' was made to appellant on the record prior to his plea. Here, there are no such allegations before us." Id. at fn.1 (emphasis original).
 {¶ 12} Based upon the arguments in appellant's application for reopening and the ruling in Engle, we ruled that appellant presented a genuine issue as to whether he received effective assistance of appellate counsel. State v. Vaughn (Dec. 12, 2002 J.E.), 7th Dist. No. 683. As such, we reopened the appeal. Id. In reopening, we warned that the Engle
Court only vacated the plea in the direct appeal because the Court found evidence on the record. We noted that if the complete picture of voluntariness required resort to items outside the record, then the direct, reopened appeal is not the proper place for the arguments. The reopened appeal is now before us.
 BATTERED CHILD SYNDROME {¶ 13} Battered child syndrome is not an independent defense; however, it can support the affirmative defense of self-defense or justify a lesser included offense instruction on voluntary manslaughter.State v. Nemeth (1998), 82 Ohio St.3d 202, 205, 207. Self-defense generally has three elements: (1) the defendant was not at fault in creating the violent situation; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force; and (3) the defendant did not violate any duty to retreat. State v. Thomas (1997), 77 Ohio St.3d 323,326 (holding that there is no duty to retreat in one's own home even against a cohabitant, in a battered woman syndrome case).
 {¶ 14} In Nemeth, a sixteen-year-old male took his compound bow and shot his mother in the head and neck with five arrows as she lay sleeping on the couch. The trial court granted the state's motion in limine to preclude testimony on the battered child syndrome. At trial, the court again refused to admit the testimony and refused to instruct on voluntary manslaughter. The defense proffered the psychologist's testimony at the close of its case. The defendant was then convicted of murder. This court reversed and remanded, and the Supreme Court affirmed our reversal, stating that battered child syndrome was relevant and also admissible under Evid.R. 702. State v. Nemeth (Jan. 30, 1997), 7th Dist. No. 95JE32, affirmed in 82 Ohio St.3d 202.
 {¶ 15} Expert evidence on battered child syndrome is admissible when it is relevant and meets the requirements of Evid.R. 702. Nemeth,82 Ohio St.3d at 205. Pursuant to Evid.R. 702, a witness can testify as an expert if: (A) the testimony either relates to matter beyond the common knowledge or experience of laypersons or dispels a common misperception; (B) the witness is qualified as an expert; and (C) the testimony is based on reliable scientific, technical, or other specialized information.
 {¶ 16} The Nemeth Court noted that expert testimony on battered child syndrome helps dispel common misconceptions about the ability to escape, nonreporting of abuse, and "nonconfrontational killings" which "do not fit the general pattern of self-defense." Id. at 208. The expert testimony also helps explain the subjective beliefs held by the child concerning impending danger. Id.
 {¶ 17} The Court explained that child abuse need not be excessive or debilitating physical violence to affect the emotional and psychological development of the child. Id. at 212. "Abuse also includes such psychological trauma as sensory overload * * * and verbal overload with insults, accusation, and indoctrination." Id. Abused children exhibit a specific set of symptoms at the occurrence of an interpersonal triggering event; the symptoms include excessive anxiety, abnormal expressions of aggression or impaired impulse control, and dissociation. Id. at 213. The syndrome is generally accepted in the scientific community, as is battered woman syndrome which has previously been recognized as a proper topic for expert testimony. Id. at 212-213.
 {¶ 18} In its prior response brief, the state claimed that battered child syndrome was not relevant in this case. Under Evid.R. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id. at 207. Evidence that supports a defendant's explanation of the events and establishes state of mind is "clearly relevant" to his defense. Id. (noting that battered child syndrome was relevant to determine issues such as prior calculation and design, purpose, initiator of aggression, and belief of imminent danger).
 {¶ 19} Here, the psychologist's report opined that appellant was an "emotionally battered child" and made conclusions about appellant's reactions that may characterize the syndrome. The trial court's twenty-three page journal entry made many factual findings that are not properly made in ruling on a pretrial motion. The court made factual conclusions that only a jury or trial judge at a bench trial could make, such as credibility and weight. The court's only function in ruling on such a motion in limine is to determine admissibility of certain evidence by evaluating whether it is relevant and whether it fits into Evid.R. 702.
 {¶ 20} In any case, the actual ruling on the motion in limine is not before this court at this time. Engle, 74 Ohio St.3d at 529-530
(ruling on exclusion of battered woman syndrome not appealable after defendant enters a plea). See, also, Nemeth, 82 Ohio St.3d 202 (where the defendant appealed the granting of the state's motion in limine excluding battered child syndrome evidence after proceeding through a jury trial and proffering the psychologist's testimony at the close of the case). The only issue before us is whether appellant's plea was voluntary, knowing, and intelligent where he believed that he could appeal the ruling on the state's motion in limine after he pled no contest.
 ASSIGNMENTS OF ERROR {¶ 21} Appellant sets forth the following two interrelated assignments of error:
 {¶ 22} "Appellant was denied due process of law when the trial court failed to fully determine whether appellant's no contest plea was knowingly, voluntarily, and intelligently made."
 {¶ 23} "Appellant was deprived the effective assistance of appellate counsel under U.S. const. amend. VI and VIII and ohio const. art I, § 1 and § 10 when his counsel failed to address the voluntariness of this plea on direct appeal."
 {¶ 24} Appellant urges that this case is analogous to Engle. He claims that the trial court gave defense counsel and appellant the impression that the pretrial exclusionary ruling was appealable because the court's entry renamed the motion in limine as a motion to suppress. Appellant notes that he pled no contest rather than guilty, which preserves pretrial rulings on suppression motions. Appellant also citesState v. Watson (Aug. 27, 1981), 10th Dist. No. 80-AP-880, where the appellate court vacated a plea based upon the defendant's erroneous assumption that he could have an admissibility of evidence issue determined on appeal. In that case, defense counsel stated at the plea hearing that defendant was pleading no contest to preserve the defendant's right to appeal.
 {¶ 25} The state responds by citing Crim.R.11 and urging that the court complied with the requirements set forth in the rule. The state attempts to distinguish Engle by pointing out that the prosecutor in that case stated six times on the record that the defendant could appeal the pretrial ruling. The state contends that the record in this case does not establish that appellant was advised he could appeal the pretrial ruling.
 STANDARD OF REVIEW LAW {¶ 26} A reopened criminal appeal initially revolves around the issue of ineffective assistance of appellate counsel for failure to raise or failure to fully address a certain assignment of error. Pursuant to App.R. 26(B)(9), this court shall vacate its prior judgment and enter the appropriate judgment if it finds the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency. See Statev. Gillard (1999), 85 Ohio St.3d 363, 364. Thus, the issue becomes whether the assignment of error raised in the reopened appeal has merit. If the assignment of error has merit and would required reversal of the trial court's decision and/or vacation of the plea, then the ineffectiveness of appellate counsel is sufficiently established. As such, whether appellant was prejudiced by a deficiency in appellate counsel's performance depends on whether this court determines that there are sufficient indicators on the record to establish that appellant's plea was involuntary, unknowing, or unintelligent.
 {¶ 27} A plea must be voluntary, knowing, and intelligent. Crim.R. 11(C)(2) requires an oral dialogue in order for the trial court to fully determine the defendant's understanding of the consequences of his plea.Engle, 74 Ohio St.3d at 527. If the record reflects that the parties were under the court-created impression that appellant could appeal the grant of the state's motion in limine, then the plea is not valid. Id. InEngle, the prosecutor made six references to an appeal by the defendant when explaining the plea bargain to the trial court. The Supreme Court held:
 {¶ 28} "Based upon the prosecutor's statements to the court, it is beyond doubt that defense counsel had explained to his client the strategy of pleading to reduced charges and appealing the trial court's adverse rulings, rather than proceeding with a defense that had been stripped of its key elements. The trial court listened without uttering a word of correction." Id.
 {¶ 29} The Court then favorably quoted the dissent from the appellate court case as follows:
 {¶ 30} "Appellant's agreement to the plea bargain implies her understanding that she could appeal those issues. Likewise, though the trial court did not expressly confirm the prosecutor's representation of the availability of appeal on those issues, its failure to advise the prosecutor, defense attorney and/or the defendant to the contrary would be considered by most defendants to be a tacit affirmation/recognition of her ability to appeal those very issues." Id. at 528, quoting State v.Engle (Aug. 11, 1994), 5th Dist. No. 38-CA-OCT-92 (Hoffman, J. dissenting).
 {¶ 31} The Supreme Court concluded that there could be no doubt that Engle's plea was predicated on the belief that she could appeal the trial court's grant of the state's motion in limine resulting in exclusion of evidence on battered woman syndrome. Id. The concurring opinion which received four votes and thus is also part of the majority opinion added:
 {¶ 32} "[T]he trial court, the prosecutor, and the defense attorney all misled the defendant as to her right to appeal the court's ruling on the motion in limine. At best this demonstrates confusion on the part of these officers of the court and of the court itself as to the state of the law; at worst it shows an appalling lack of concern for the preservation of a fair system which accurately determines the guilt or innocence of accused parties. As the majority correctly holds, with inaccurate legal advice, appellant's plea could not have been made knowingly or intelligently. It was the duty of all officers of the court, that is, the prosecution, the defense attorney, and the trial court itself, to ensure that appellant understood the implication of her plea of no contest." Id. at 529-530 (Resnick, J. concurring).
 ANALYSIS {¶ 33} First, we note that appellant entered a plea of no contest rather than a plea of guilty. This distinction is important because a guilty plea waives appellate review of pretrial rulings but a no contest plea preserves certain rulings for appeal. See Village of Montpelier v.Greeno (1986), 25 Ohio St.3d 170, 172, fn. 2 (noting that a pretrial ruling such as on a speedy trial issue is preserved only by a no contest plea). Additionally, Crim.R. 12(H) specifically states that a plea of no contest does not preclude a defendant from asserting on appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress. The fact that appellant pled no contest rather than guilty does not make his case for him. It is, however, one factor to consider in determining whether the record establishes that his plea was not voluntary, knowing, or intelligent because he believed that he could appeal the ruling on the motion in limine. Moreover, the significance of the aforementioned no contest plea is magnified when viewed in conjunction with the trial court's judgment granting the state's motion in limine. The trial court itself seemed to erroneously frame the motion as being a suppression motion rather than a true motion in limine. After defining a true motion in limine as a preliminary ruling, the trial court stated:
 {¶ 34} "More specifically, in criminal cases, a motion in limine
may be used in two different ways. First, it can be the equivalent of a motion to suppress evidence. Second, it can be used as the means to prevent prejudicial questions and/or statements from being made until their admissibility can be determined later at trial. * * * The State's motion sub judice is more akin to one to suppress, or preclude, evidence relating to an entire subject area as a `matter of law'. If taken as a `motion to suppress', then this court assumes the role of `trier of fact' and is in the best position to resolve questions of fact." (Feb. 10, 1997 Judgment Entry and Opinion at page 3) (emphasis original). See, also, page 22 again calling the motion one of suppression.
 {¶ 35} These statements were enough to cause confusion with regards to the status of the motion's label and the subsequent effect on the right to appeal. A ruling on a suppression motion is appealable by a defendant after a no contest plea, unlike a ruling on a motion in limine, which is only appealable by a defendant after the defendant proceeds through a trial. Engle, 74 Ohio St.3d at 529 (Resnick, J concurring with four votes).
 {¶ 36} The fact that the trial court made a statement that implies the decision is appealable makes the case similar to Engle. In fact, here the trial court expressly stated an erroneous legal conclusion that would result in a belief that the decision is appealable after a no contest plea, whereas in Engle, the trial court was only said to have implicitly
adopted the prosecutor's statement on appealability by failing to correct it. Furthermore, at the later plea hearing, the court denied appellant's motion to reconsider the ruling "suppressing the use of battered child syndrome * * *." (Tr. 4). (Emphasis added.) Finally, on page 2 of the judgment entry, the trial court stated that its decision could not be reversed on appeal absent an abuse of discretion.
 {¶ 37} In addition to the trial court's misleading statements, it appears clear that counsel advised appellant that the ruling would be appealable after the plea. This can be seen in counsel's attempt to proffer evidence into the record for purposes of an appeal after the court's ruling. Further, after the plea and sentencing hearing, defense counsel asked the court to stay the sentence pending appeal. (Tr. 14). The court said it would consider the request. These final notes help confirm appellant's impression that the pretrial ruling was appealable. Although the trial court need not go beyond the parameters of Crim.R. 11, in a case such as this, where the trial court itself muddies the waters and causes trial counsel to fail to recognize that a plea would waive the ruling, the plea can be vacated.
 CONCLUSION {¶ 38} Based upon the trial court's statement characterizing its decision as one of suppression and counsel's submission to this ruling and subsequent belief that the ruling was thus appealable, we have determined that appellant's plea of no contest was not knowing, voluntary, or intelligent. Under the specific facts and circumstances that exist in this case, Engle requires plea vacation. As in Engle, the trial court led appellant to believe that the pretrial exclusionary ruling was appealable. Also as in Engle, the error leading to the belief is on the record. Accordingly, appellant's assignments of error have merit.
 {¶ 39} For the foregoing reasons, this case is hereby reversed and remanded to the trial court with instructions that appellant be permitted to withdraw his plea of no contest and proceed with trial.
Waite, P.J., and Donofrio, J., concur.