[Cite as *State v. Johnson*, 2018-Ohio-3621.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-12-016 |
| | : | O P I N I O N |
| - vs - | | 9/10/2018 |
| | : | |
| JACK S. JOHNSON, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 17CR12267

Martin P. Votel, Preble County Prosecuting Attorney, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

Nicole L. Rutter-Hirth, 2541 Shiloh Springs Road, Dayton, Ohio 45426, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Jack S. Johnson, appeals his conviction and sentence in the Preble County Court of Common Pleas. For the reasons outlined below, we affirm in part, reverse in part, and remand this matter to the trial court for the limited purpose of resentencing.

{¶ 2} On February 7, 2017, the Preble County Grand Jury returned a three-count

indictment charging Johnson with two fourth-degree felony offenses of operating a vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a), (d), and (G)(1)(d), and one third-degree felony offense of OVI in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(e). The indictment included a specification for a mandatory prison term for repeat OVI offenders pursuant to R.C. 2941.1413(A), and a specification for forfeiture of vehicle pursuant to R.C. 2941.1417(A). Johnson moved to suppress evidence of the arrest, officer observations, and breathalyzer test results. Johnson asserted that the officer lacked reasonable suspicion to stop and detain him for OVI, failed to administer the field sobriety tests in substantial compliance with the procedures set forth in the National Highway Traffic Safety Administration ("NHTSA") Manual, and lacked probable cause to arrest him. The trial court held a hearing on the matter, which revealed the following facts.

{¶ 3} Officer Eric Stevens of the village of New Paris Police testified that on January 27, 2017, he received an anonymous tip regarding a driver, who was intoxicated and a felon in possession of a firearm. Stevens saw a vehicle matching the description turn left without using a turn signal. Stevens initiated a traffic stop and identified Johnson as the driver. Upon approaching the truck, Stevens detected an odor consistent with an alcoholic beverage. Stevens also noticed Johnson slurring his speech. Johnson admitted he consumed at least one alcoholic beverage and that he did not feel "he should be driving."

{¶ 4} At Stevens' request, Johnson exited the truck. Stevens proceeded to administer the Horizontal Gaze Nystagmus ("HGN") Test. Stevens testified he asked Johnson to hold his head still and to follow a pen (the "stimulus") with his eyes only, as Stevens moved the stimulus in a horizontal motion approximately 12-15 inches from Johnson's face. Johnson failed to keep his head still the first few times. Stevens allowed Johnson to place his hands on his cheeks and physically hold his head still while Stevens moved the stimulus to a 45-degree angle right and left. Johnson still failed to follow the

stimulus with his eyes only. Stevens observed in both eyes lack of smooth pursuit, nystagmus at maximum deviation, and onset of nystagmus before 45 degrees. Additionally, Stevens observed Johnson sway and slur his speech. Stevens memorialized the HGN test results in a FST form. Additionally, Stevens wore a body camera during the entirety of the stop.

{¶ 5} Next, Stevens administered a walk-and-turn test. Stevens testified he received training on these field sobriety tests pursuant to NHTSA standards at the Ohio Peace Officer's Training Academy in 2010. Following the walk-and-turn test, Stevens placed Johnson under arrest and conducted a search of Johnson's truck. Stevens found one open and one unopened can of Four Loko. He then transported Johnson to the Preble County Sheriff's Office where a trained officer read Johnson the BMV 2255 form and administered a breathalyzer test. The test indicated a blood-alcohol-content ("BAC") above the legal limit.

{¶ 6} The trial court suppressed the walk-and-turn test results and overruled the remainder of the motion. Johnson entered a plea of no contest and the trial court found him guilty of third-degree felony OVI. The trial court sentenced Johnson to a mandatory two-year prison term.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE RESULTS OF THE HGN [TEST] AS THE TEST WAS NOT PERFORMED IN SUBSTANTIAL COMPLIANCE WITH NHTSA STANDARDS.

{¶ 9} Johnson argues the trial court erred in failing to suppress the HGN test results because Stevens did not conduct the test in substantial compliance with NHTSA standards. Specifically, Johnson asserts Stevens administered the HGN test inconsistent with the standards set forth in the NHTSA manual by performing two of three sub-sets of the test together. Additionally, Johnson contends Stevens' testimony demonstrated a general lack of

knowledge with regard to the NHTSA standards.

{¶ 10} Appellate review of a trial court's decision to grant or deny a motion to suppress is a mixed question of law and fact. *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 8. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *State v. Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 9. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id.*

{¶ 11} In response to a motion to suppress regarding field sobriety tests, the state must show the requisite level of compliance with accepted testing standards. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 9. The typical standards, as were used in this case, are those from NHTSA. *State v. Jimenez*, 12th Dist. Warren No. CA2006-01-005, 2007-Ohio-1658, ¶ 12. In order for field sobriety testing evidence to be admissible, the state is not required to show strict compliance with testing standards, but must instead demonstrate by clear and convincing evidence that the officer substantially complied with NHTSA standards. R.C. 4511.19(D)(4)(b); *State v. Selvage*, 12th Dist. Clermont No. CA2011-08-058, 2012-Ohio-2149, ¶ 12. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v. Fink*, 12th Dist. Warren Nos. CA2008-10-118 and

CA2008-10-119, 2009-Ohio-3538, ¶ 26.

{¶ 12} As an initial matter, the state asserts Johnson only raised a general challenge to the HGN test in his motion to suppress; therefore, the state was only required to demonstrate substantial compliance with NHTSA standards in general terms.

{¶ 13} Crim.R. 47 governs motions in a criminal proceeding and requires a defendant to "state with particularity the grounds upon which it is made and shall set forth the relief or order sought." In other words, a defendant must "state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus. After a defendant meets this burden by effectively placing the prosecutor and the court on sufficient notice of the issues to be determined, the burden then shifts to the state to show substantial compliance with the applicable standards. *State v. Plunkett*, 12th Dist. Warren No. CA2007-01-012, 2008-Ohio-1014, ¶ 11, citing *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 220 (1988).

{¶ 14} The extent of the state's burden for establishing substantial compliance "only extends to the level with which the defendant takes issue with the legality of the test." *State v. Nicholson*, 12th Dist. Warren No. CA2003-10-106, 2004-Ohio-6666, ¶ 10. For example, if the defendant's motion to suppress raises issues in general terms, then the state is only required to show substantial compliance in general terms. *Plunkett* at ¶ 12, citing *Jimenez*, 2007-Ohio-1658. The state's burden to show compliance to a general allegation is slight and requires only the amount of specificity contained in the motion. *Nicholson* at ¶ 11. Therefore, the state need only "present general testimony that there was compliance" when the motion is not sufficiently specific. *Id.* However, if the motion to suppress lacks the required particularity, the defendant may still provide some factual basis, either during cross-examination or by conducting formal discovery, thereby raising the requirement on the state to demonstrate substantial compliance with specific evidence. *Plunkett* at ¶ 25-26, citing

*State v. Embry*, 12th Dist. Warren No. CA2003-11-110, 2004-Ohio-6324, ¶ 27-28.

{¶ 15} Johnson's motion to suppress contains one boilerplate assertion that Stevens "did not perform the field sobriety tests in substantial compliance with the procedure set forth in the [NHTSA] Manual." The accompanying memorandum of law restates this general assertion without providing any additional information on the issue. Therefore, Johnson's motion and memorandum did not set forth the legal and factual bases with sufficient particularity to place the prosecutor on notice of the procedures he intended to challenge. *Plunkett* at ¶ 25-26. Thus, prior to the hearing the state was only required to demonstrate substantial compliance with NHTSA standards in general terms. However, Johnson's cross-examination of Stevens raised the specificity of the evidence required by the state to meet its burden. With respect to the HGN test, Johnson thoroughly cross-examined Stevens regarding his training and the procedures he used in conducting the test. Johnson asked Stevens specific questions regarding whether he conducted the HGN test in compliance with the NHTSA standards. These questions compared the test performed by Stevens with the test outlined by the NHTSA manual. Therefore, we will address Johnson's first asserted error in terms of whether the state set forth specific evidence to demonstrate by clear and convincing evidence substantial compliance with NHTSA standards.

{¶ 16} As stated by the Ohio Supreme Court, "HGN test results are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 28. We have previously detailed the parameters of the HGN test set forth by the NHTSA manual as follows:

> the NHTSA manual provides that "a police officer should instruct the suspect that [he is] going to check the suspect's eyes, that the suspect should keep [his] head still and follow the stimulus

with [his] eyes, and that the suspect should do so until told to stop. After these initial instructions are provided, the officer is instructed to position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level. The officer is then told to check the suspect's pupils to determine if they are of equal size, the suspect's ability to track the stimulus, and whether the suspect's tracking is smooth. The officer is then to check the suspect for nystagmus at maximum deviation and for onset of nystagmus prior to 45 degrees." The manual instructs the officer to repeat each of the three portions of the HGN test.

In addition, the NHTSA guidelines list certain approximate and minimum time requirements for the various portions of the test. For instance, when checking for smooth pursuit, the time to complete the tracking of one eye should take approximately four seconds. When checking for distinct nystagmus at maximum deviation, the examiner must hold the stimulus at maximum deviation for a minimum of four seconds. When checking for the onset of nystagmus prior to 45 degrees, the officer should move the stimulus from the suspect's eye to his shoulder at an approximate speed of four seconds.

(Citations omitted and alterations in original.) *State v. Clark*, 12th Dist. Brown No. CA2009-10-039, 2010-Ohio-4567, ¶ 22-23.

{¶ 17} Based on our review, we find that Stevens substantially complied with NHTSA standards when he administered the HGN test.

{¶ 18} Stevens testified about his training and ability in the administration of the HGN test, the technique he used in administering the test, and the indicators he looked for while performing the test. Stevens testified he instructed Johnson to hold his head still and follow the stimulus with his eyes. Stevens held the stimulus approximately 12 to 15 inches from Johnson's face and moved the stimulus to a 45-degree angle right and left. Stevens' testimony and the Impaired Driver Report he filled out at the scene detail that Johnson demonstrated lack of smooth pursuit, distinct nystagmus at maximum deviation, and onset of nystagmus before 45 degrees. Stevens explained he observed Johnson's inability to follow the stimulus back and forth, eyes breaking away from the stimulus, and eyes jerking. When checking for nystagmus at maximum deviation, Stevens held the stimulus at the maximum

point for approximately four seconds. Johnson's right and left eyes both demonstrated "major twitching." Stevens likewise observed twitching in both eyes prior to reaching 45 degrees.

{¶ 19} Johnson notes that Stevens testified on cross-examination that he first performed the lack of smooth pursuit test, and then, performed the nystagmus at maximum deviation and nystagmus prior to 45 degrees tests together. Further, Stevens' testimony indicated he had some confusion with recalling specific steps of the HGN test as set forth in the NHTSA manual. Johnson cites a Second District opinion finding a trial court properly suppressed HGN test results where the administering officer only looked for lack of smooth pursuit and not nystagmus at maximum deviation and prior to 45 degrees. *State v. Hall*, 2d Dist. Montgomery No. 19933, 2004-Ohio-1307, ¶ 22. However, *Hall* is distinguishable factually, as Stevens performed all three parts of the HGN test. Further *Hall* was decided under the prior inapplicable standard for admitting HGN test results. *Id.* (suppressing evidence because officer did not *strictly* comply with NHTSA manual).

{¶ 20} While Stevens may not have strictly complied in performing the HGN test in accordance with the step-by-step directions detailed by the NHTSA manual, we find competent, credible evidence exists demonstrating Stevens substantially complied with the NHTSA standards. Stevens gave Johnson the proper instructions before the beginning the HGN test. Stevens then watched Johnson's eyes for a lack of smooth pursuit. Next, he watched for nystagmus prior to 45 degrees and at 45 degrees. While performing the HGN test, Stevens adhered to the distance and timing requirements for the three sub-sets of the test. Although Stevens did not perform the final two sub-sets of the HGN test independently, this court has found substantial compliance where an officer performed the HGN test with slight deviations from the parameters outlined by the manual. *Clark*, 2010-Ohio-4567, at ¶ 33 (finding substantial compliance where an officer moved the stimulus at a rate of speed

differing from the manual procedures); *State v. Lange*, 12th Dist. Butler No. CA2007-09-232, 2008-Ohio-3595, ¶ 10-11 (finding substantial compliance where no prejudice could be shown because presumably strict compliance would have rendered the same results).

{¶ 21} With respect to Stevens' knowledge of the exact procedures outlined in the manual, we defer to the trial court, as it was in the best position to resolve factual questions and evaluate witness credibility. *State v. Dallman*, 12th Dist. Clermont Nos. CA2017-11-056 and CA2017-11-057, 2018-Ohio-2670, ¶ 10. Therefore, we find the state demonstrated by clear and convincing evidence substantial compliance with NHTSA standards.

{¶ 22} Nonetheless, even assuming the trial court erred by not suppressing the HGN test results, any error in the trial court's failure is harmless error due to the overwhelming amount of incriminating evidence supporting Johnson's OVI conviction. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶ 27 (finding trial court's failure to suppress HGN test results was harmless error where officer had probable cause to arrest defendant for OVI based on the remainder of the evidence); *State v. Spence*, 12th Dist. Butler No. CA2002-05-107, 2003-Ohio-4237, ¶ 41 (finding trial court's failure to suppress evidence was harmless error where overwhelming incriminating evidence supported conviction). At the outset of the stop, Stevens detected an odor consistent with an alcoholic beverage and observed Johnson slurring his speech. Johnson continued slurring his speech throughout the duration of the stop, swayed from side-to-side, and informed Stevens he had consumed at least one alcoholic beverage and felt he should not be driving. Once placed under arrest, a search of Johnson's vehicle revealed multiple alcoholic beverage containers. Additionally, Johnson submitted to a breathalyzer test, which indicated a BAC above the legal limit. Therefore, any alleged error by the trial court did not affect the outcome of the case and would constitute harmless error.

{¶ 23} Accordingly, Johnson's first assignment of error is overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE TRIAL COURT ERRED IN SENTENCING APPELLANT BY IMPOSING A TWO[-]YEAR SENTENCE WITHOUT SPECIFYING WHETHER THE SENTENCE WAS FOR THE UNDERLYING OFFENSE OR THE SPECIFICATION.

{¶ 26} Johnson asserts, and the state concedes, the trial court erred in imposing a two-year mandatory sentence for his third-degree felony OVI conviction, with an accompanying habitual offender specification.

{¶ 27} We review felony sentences pursuant to the standard of review set forth in R.C. 2953.08(G)(2) to determine whether the imposition of those sentences is clearly and convincingly contrary to law. *State v. Stamper*, 12th Dist. Butler No. CA2012-08-166, 2013-Ohio-5669, ¶ 9. A sentence is not clearly and convincingly contrary to law where the record supports the trial court's findings under R.C. 2929.14(C)(4) and where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly applies postrelease control, and sentences appellant within the permissible statutory range. *Id.* Pursuant to R.C. 2953.08(G)(2), appellate courts may "vacate [a] sentence" clearly and convincingly contrary to law "and remand the matter to the sentencing court for resentencing." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 4.

{¶ 28} The Ohio Supreme Court has held that

> offenders convicted of a third-degree-felony OVI and a repeat-offender specification under R.C. 2941.1413 are subject to the following: (1) for the specification conviction, a one- to five-year mandatory prison sentence, which must be served prior to and consecutive to any additional prison term and (2) for the underlying OVI conviction, a discretionary term of 9 to 36 months.

*State v. South*, 144 Ohio St.3d 295, 2015-Ohio-3930, ¶ 7; *see also State v. Burkhead*, 12th Dist. Butler No. CA2014-02-028, 2015-Ohio-1085, ¶ 17. Therefore, such offenders are subject to a one- to five-year mandatory prison term for the habitual offender specification,

- 10 -

"which must be served prior to and consecutive to any additional prison term imposed under R.C. 2929.14(A)(3)(b)" and a discretionary 9- to 36-month definite prison term for the underlying OVI conviction. *South* at ¶ 19; *Burkhead* at ¶ 17-20.

{¶ 29} The trial court's judgment entry of sentence indicates it imposed a two-year mandatory prison term for the third-degree OVI conviction and made "no additional sentence pursuant to the specification." Thus, we find Johnson's sentence is contrary to law and Johnson's second assignment of error is sustained.

{¶ 30} As stated above, the sentencing statutes mandate that a trial court impose a mandatory one-to-five-year prison term for the habitual offender specification, which must be served prior to and consecutive to any additional discretionary prison term imposed for an underlying OVI conviction. Accordingly, we vacate Johnson's sentence for his underlying OVI conviction and remand this matter to the trial court for resentencing for the habitual offender specification and OVI conviction. Upon remand, the trial court shall impose a one-year mandatory prison term for the habitual offender specification and either a nine- or twelve-month discretionary prison term for the OVI conviction for a total aggregate prison term not to exceed two years. The mandatory prison term shall be ordered to be served prior to and consecutive to the discretionary prison term.

{¶ 31} Judgment affirmed in part, reversed in part, and remanded for resentencing.

S. POWELL, P.J., and HENDRICKSON, J., concur.