[Cite as *State v. Asbury*, 2021-Ohio-2877.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2021-02-003 |
| | : | O P I N I O N |
| - vs - | | 8/23/2021 |
| | : | |
| AMOS ASBURY, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY MUNICIPAL COURT
Case No. TRC2003134A

Andrew T. McCoy, Clinton County Prosecuting Attorney, and David M. Henry, Assistant Prosecuting Attorney, for appellant.

Peterson Law Office, and Shaun D. Peterson, for appellee.

**HENDRICKSON, J.**

{¶1}   Appellant, the state of Ohio, appeals from a decision of the Clinton County Municipal Court granting a motion to suppress filed by appellee, Amos Asbury.  For the reasons discussed below, we reverse the trial court's decision and remand this matter for further proceedings.

{¶2} On September 22, 2020, Ohio State Highway Patrol Troopers Brian Parsons and Dante Pollock were on patrol in Clinton County, Ohio. At approximately 11:21 p.m., the troopers observed Asbury's vehicle drive past them on Starbuck Road in Wilmington, Ohio without the rear license plate illuminated. The troopers decided to initiate a traffic stop of the vehicle for an equipment violation. While catching up to Asbury's vehicle, neither trooper observed Asbury commit a moving violation or engage in erratic driving.

{¶3} Upon stopping Asbury's vehicle, Trooper Pollock approached the driver-side door and Trooper Parsons approached the passenger-side door. Asbury, who was the only occupant of the vehicle, rolled his window down slightly upon the troopers' approach. Trooper Pollock observed that Asbury appeared nervous and a "little irritated" that Pollock had stopped his vehicle and was talking to him. Because Asbury had only rolled his window down "very little," or "just enough to fit, like, both your hands through if you were to just reach in the window," and Troper Pollock had difficulty hearing Asbury, Trooper Pollock asked Asbury to lower the window further. Asbury complied.

{¶4} Asbury was unable to produce his driver's license. As Trooper Pollock spoke with Asbury, he noticed that Asbury's eyes were bloodshot and glossy and his speech was "a little slurred." Trooper Pollock noticed there was an odor of an alcoholic beverage emanating from Asbury's person. According to Pollock, "[i]t smelled like he had been – he's at least had a couple of beers." When questioned, Asbury denied that he had been drinking.

{¶5} Trooper Pollock asked Asbury to exit the vehicle so that he could further his investigation by completing field sobriety tests to make sure Asbury was okay to drive. When Asbury exited his vehicle, Trooper Pollock continued to smell an odor of an alcoholic beverage upon him. The trooper also detected a faint odor of marijuana. Trooper Parsons, who conducted a pat down of Asbury for weapons, also detected an odor of marijuana about

Asbury's person. During his pat down of Asbury, Trooper Parsons recovered a small baggie of marijuana.

{¶6} Trooper Pollock administered the horizontal gaze nystagmus (HGN) test, the walk-and-turn test and the one-leg stand test. Trooper Pollock observed four of six clues of impairment during the HGN test and observed that Asbury had swayed off balance on the one-leg stand test. Trooper Pollock could not recall how many violations Asbury had committed during the walk-and-turn test.

{¶7} Asbury was charged with operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and with failing to illuminate his vehicle's rear license plate in violation of R.C. 4513.05. Asbury pled not guilty to the charges and filed a motion to suppress, arguing that the troopers did not have reasonable articulable suspicion to conduct the field sobriety tests. A hearing on Asbury's motion was held on February 1, 2021, at which time the state presented testimony from Trooper Pollock and Trooper Parsons. That same date the trial court issued a short decision granting Asbury's motion and suppressing all "evidence flowing from the field sobriety tests administered to the Defendant." Though the trial court's decision did not set forth any findings of fact as support for its decision to grant the motion to suppress, the trial court referenced a Fifth District Court of Appeals opinion, *State v. Baker*, 5th Dist. Ashland No. 17-COA-038, 2018-Ohio-2285.

{¶8} The state now appeals the trial court's decision granting Asbury's motion to suppress, raising the following as its sole assignment of error:

{¶9} THE TRIAL COURT ERRED IN GRANTING [ASBURY'S] MOTION TO SUPPRESS.

{¶10} The state argues the trial court erred in granting Asbury's motion to suppress as the evidence presented at the suppression hearing demonstrated the troopers had

reasonable articulable suspicion of criminal activity to continue Asbury's detention and administer the field sobriety tests where the troopers smelled the odor of an alcoholic beverage upon approaching Asbury's car, Asbury was the sole occupant of the vehicle, Asbury had bloodshot and glossy eyes, and Asbury was slurring his speech. The state contends the trial court erred by relying on the Fifth District's *Baker* decision in granting the motion to suppress.

{¶11} Generally, "[a]ppellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-Ohio-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Turner* at ¶ 14. "An appellate court * * * independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶12} In the present case the trial court did not make any findings of fact in granting the motion to suppress. As a result, we review the record to determine whether sufficient evidence exists to support the trial court's decision. *State v. Haynes*, 1st Dist. Hamilton No. C-140205, 2015-Ohio-3432, ¶ 18. *See also State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 19 (noting that where a trial court did not make any specific factual findings aside from commenting on the credibility of a trooper's testimony, it was appropriate

for the appellate court to "review the record to determine the facts and then determine whether those facts satisfy the applicable legal standard").

{¶13} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. When the police stop a vehicle based on probable cause that a traffic violation has occurred, the stop is reasonable under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769 (1996); *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), syllabus.

{¶14} The detention of a stopped motorist may continue beyond the normal time frame for issuing a citation when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 15; *State v. Koogler*, 12th Dist. Preble No. CA2010-04-006, 2010-Ohio-5531, ¶ 7. Where reasonable and articulable suspicion of criminal activity exists, "[t]he officer may detain the vehicle for a period of time reasonably necessary to confirm or dispel his suspicions of criminal activity." *State v. Williams*, 12th Dist. Clinton No. CA2009-08-014, 2010-Ohio-1523, ¶ 18.

{¶15} "[A] police officer must have a reasonable suspicion of criminal activity to support administering field sobriety tests." *Koogler* at ¶ 7. "Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together, with rational inferences from those facts, reasonably warrant the intrusion." *State v. Hill*, 12th Dist. Warren No. CA2015-05-044, 2015-Ohio-4655 at ¶ 10, citing *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988). Reasonable and articulable suspicion is determined by evaluating the totality of the circumstances "through the eyes of a reasonable and prudent police officer

on the scene who must react to events as they unfold." *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 13.

{¶16} "The usual physical characteristics of alcohol consumption, such as the odor of alcohol, bloodshot eyes, flushed face, and slurred speech are sufficient to give rise to a reasonable suspicion of intoxication." *State v. Lucking*, 12th Dist. Butler No. CA2002-12-303, 2004-Ohio-90, ¶ 9. "Other factors, such as the time and location of the stop, erratic driving, diminished coordination, demeanor of the driver, and admission of alcohol consumption are also relevant for consideration for whether reasonable suspicion of intoxication exists." *Id.*, citing *State v. Wegley*, 12th Dist. Warren No. CA2001-07-070, 2002 Ohio App. LEXIS 245 (Jan. 28, 2002). "[W]hile several indicia of intoxication may be necessary to support a reasonable suspicion of intoxication * * * not every factor must be present before a suspicion of intoxication is reasonable." *Id.* at ¶ 10, citing *State v. Evans*, 127 Ohio App.3d 56, 63 (11th Dist.1998). Furthermore, while there may be an innocent or non-impairment reason that a defendant's eyes are bloodshot and glassy, this "does not diminish the relevance of these factors for the question of whether the trooper reasonably suspected [the defendant] was intoxicated." *Koogler*, 2010-Ohio-5331 at ¶ 16.

{¶17} This court has previously upheld the denial of a motion to suppress and found than an officer had reasonable articulable suspicion to perform field sobriety tests even though the officer had not observed erratic driving, the driver denied that he had been drinking, and the officer had not immediately smelled the odor of an alcoholic beverage on the defendant's person as the defendant's vehicle had been "filled with cigarette smoke." *Lucking* at ¶ 10-12. In that case, the officer observed that the defendant had been driving his vehicle at 3:00 a.m. without headlights, the defendant's eyes were glassy and bloodshot, and the defendant's speech was slightly slurred. *Id.* at ¶ 12. We found that "[c]onsidering all of these facts together, the totality of the circumstances supports a finding that [the

officer] had a reasonable, articulable suspicion that [the defendant] was intoxicated * * * [and] that the [officer] was justified in asking [the defendant] to perform field sobriety testing." *Id.*

{¶18} Similarly, in another case, this court determined that an officer's observations after initiating a traffic stop for a nonmoving violation provided the officer with sufficient reasonable suspicion of criminal activity to detain the driver of the vehicle and administer filed sobriety tests. *Koogler*, 2010-Ohio-5531 at ¶ 1. In that case, after pulling over the defendant's vehicle at 3:00 a.m. for a window tint violation, the officer observed the defendant-driver's eyes were glassy and bloodshot, her speech was slurred, and there was an "easily detectable" odor of an alcoholic beverage about the driver's breath. *Id.* at ¶ 2. An intoxicated passenger and an open container were also found in the vehicle. *Id.* After the driver was removed from the vehicle, the officer continued to smell an odor of an alcoholic beverage on the driver. *Id.* The trial court granted the driver's motion to suppress and we reversed on appeal, finding that several indicia of intoxication were present and supported the driver's continued detention to conduct the field sobriety testing. *Id.* at ¶ 15-17. In so holding, we noted that the officer had smelled the odor of an alcoholic beverage both when the driver was seated inside the vehicle "and when she was outside the vehicle and not sitting close to the open container of alcohol and the alleged intoxicated passenger." *Id.* at ¶ 12. Moreover, the fact that the driver may have been awake for a long period of time and there "could have been another explanation for [the driver's] glassy, bloodshot eyes d[id] not diminish the relevance of th[ose] factors for the question of whether the trooper reasonably suspected she was intoxicated." *Id.* at ¶ 16.

{¶19} We find, in accordance with this court's holdings in *Koogler* and *Lucking*, *supra*, that there were specific and articulable facts which, when taken together, created a reasonable suspicion of criminal activity to support the continued detention of Asbury and

the administration of the field sobriety tests. Asbury's demeanor upon being stopped late at night, which included his irritation with the troopers and his attempt to only slightly roll down his window when talking to the troopers, his bloodshot and glassy eyes, his slurred speech, and the odor of an alcoholic beverage that was observed by the troopers both while Asbury remained in the vehicle and upon his removal from the vehicle were all factors that, when viewed in their totality, provided the troopers with sufficient reasonable suspicion of criminal activity to continue to detain Asbury and administer the field sobriety tests. The trial court, therefore, erred in granting Asbury's motion to suppress.

{¶20} We further find that the trial court's reliance on the Fifth District's *Baker* decision in granting the motion to suppress was misplaced. *State v. Baker*, 2018-Ohio-2285. In *Baker*, the Fifth District held that "'[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes *and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists*.'" (Emphasis added.) *Baker* at ¶ 18, quoting *State v. Strope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849, ¶ 19. There, the Fifth District determined that there was no "further indicia of intoxication" beyond the odor of alcohol and the observance of the driver's glassy or bloodshot eyes that would have given the officer reasonable suspicion to further investigate or administer the field sobriety tests. The court rejected the state's argument that the time of night, location of the stop near bars, or the driver's "deliberate effort to avoid looking" at the trooper were relevant considerations, finding that even if the driver had been trying to avoid having his eyes seen by the trooper or having the trooper smell his breath, "the trooper was able to both smell alcohol and see [the driver's] eyes. We do not find the suggested reticence to be further indicia of impairment * * *." *Id.* at ¶ 24. Furthermore, the court found that "the time of night and location of nearby bars" were not relevant "when the stop is for an equipment violation with no signs of impaired driving" as the "location and

time give no further clues as to whether [the driver] has ingested enough alcohol to be impaired." *Id.* at ¶ 25. The court therefore concluded that "based on the condition of [the driver's] eyes and the strong odor of alcohol; first emanating from the vehicle prior to [the driver] being asked to step out of the vehicle and then on his breath, and no additional indicia of intoxication, we find the [t]rooper did not have reasonable suspicion to justify the request." *Id.* at 26.

{¶21} This court has never required a driver's admission of the consumption of alcohol as "further indicia of intoxication." While an admission by the driver that the driver had consumed alcohol is *a* relevant consideration for an officer, it is only one factor for consideration. As previously stated, other relevant considerations are the odor of alcohol, bloodshot eyes, flushed face, and slurred speech, the time and location of the stop, erratic driving, diminished coordination, and the demeanor of the driver. *Lucking*, 2004-Ohio-90 at ¶ 9; *Koogler*, 2010-Ohio-5531 at ¶ 8. Furthermore, "[t]he usual physical characteristics of alcohol consumption, such as the odor of alcohol, bloodshot eyes, flushed face, and slurred speech are sufficient to give rise to a reasonable suspicion of intoxication." *Lucking* at ¶ 9. Here, unlike in *Baker*, the driver of the vehicle exhibited slurred speech in addition to having glassy, bloodshot eyes and having an odor of an alcoholic beverage about his person. Therefore, under the totality of the circumstances presented in this case, we find Troopers Parsons and Pollock had sufficient reasonable suspicion of criminal activity to continue to detain Asbury to administer the field sobriety tests. The state's sole assignment of error is sustained. The trial court's decision granting Asbury's motion to suppress is reversed and this matter is remanded for further proceedings.

{¶22} Judgment reversed and remanded.

M. POWELL, P.J., and BYRNE, J., concur.