[Cite as *State v. Pelfrey*, 2025-Ohio-4896.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                                   :

    Appellee,                                   :           CASE NO. CA2024-12-088

    - vs -                                          :           <u>OPINION AND</u>
                                                             <u>JUDGMENT ENTRY</u>
                                                 :           10/27/2025

NICHOLAS R. PELFREY,                             :

    Appellant.                                  :


CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case Nos. 2023TRC002441 and 2023CRB000737


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellant.


# **O P I N I O N**


**PIPER, J.**

{¶ 1} Appellant, Nicholas Pelfrey, appeals his conviction in the Warren County Court of Common Pleas, after a jury found him guilty of OVI, failure to control, and endangering children. For the reasons outlined below, we affirm.

## I. Factual and Procedural Background

{¶ 2}   On December 25, 2023, Nicholas Pelfrey was operating his Jeep when it left the roadway and overturned in a ditch on State Route 122 near Hart Road in Clearcreek Township, Warren County. Pelfrey's three minor children were passengers in the Jeep when he crashed, trapping them inside. A passerby stopped and was able to cut the rear window of the vehicle with a knife to help extract them.

{¶ 3}   At approximately 8:17 p.m., Clearcreek Township Police Officer Kevin Hall arrived at the scene and observed Pelfrey's overturned vehicle with Pelfrey's children and several adults nearby. Officer Hall noted that the road was straight and unobstructed, but there was a "heavy mist," the roads were wet, and it was nighttime. As Officer Hall approached the Jeep, a woman informed him that the driver, Pelfrey, was "very drunk." She reported that Pelfrey was driving erratically and had cut her off while she was traveling westbound on State Route 122.

{¶ 4}   Upon making contact with Pelfrey, Officer Hall noticed blood around Pelfrey's mouth but no other injuries. Pelfrey did not indicate he was hurt or complain of any injuries. When asked if he was hurt, Pelfrey responded, "[J]ust my pride."

{¶ 5}   Pelfrey claimed he was driving from a "get together" at a friend's house and was arguing with his sons in the car when he hit a slick spot on the road and crashed. However, Officer Hall detected a strong odor of an alcoholic beverage from Pelfrey. Officer Hall also noted Pelfrey disregarded or was not understanding directions at the crash scene. Pelfrey attempted to retrieve items from inside the Jeep despite warnings that it was not safe. Pelfrey even tried to grab Officer Hall's flashlight out of his hands. As Pelfrey walked around the Jeep, he fell down the embankment along the road. When Officer Hall looked through the windows of the Jeep with his flashlight, he also observed an empty liquor bottle. Based on the combined circumstances, Officer Hall suspected

Pelfrey was intoxicated.

{¶ 6} Clearcreek Township Police Officer Bronnenberg arrived on the scene a few minutes after Officer Hall, who asked Officer Bronnenberg to take over the investigation of Pelfrey's intoxication while Officer Hall handled the crash scene. Officer Bronnenberg also detected the scent of an alcoholic beverage on Pelfrey and noted his glassy eyes. Officer Bronnenberg asked Pelfrey if he drank any alcohol prior to driving and Pelfrey admitted to consuming "[t]wo shots or a couple." In preparation for conducting field sobriety tests, Officer Bronnenberg instructed the emergency vehicles on site to turn off their flashing lights or reposition so the lights would not interfere with Pelfrey's vision. Officer Bronnenberg then administered the horizontal gaze nystagmus (HGN), walk-and-turn, and one-leg-stand tests. Pelfrey's physiological responses showed signs of impairment in all tests.

{¶ 7} During the HGN test, Officer Bronnenberg observed the lack of smooth pursuit in both eyes, nystagmus prior to 45 degrees in both eyes, and nystagmus at maximum deviation in both eyes, for a total of six out of six clues for alcohol impairment. During the walk-and-turn test, Pelfrey stepped off the line, failed to touch heel to toe, used his arms for balance, made an improper turn, and failed to take the correct number of steps, all which were signs of impairment.

{¶ 8} During the one-leg-stand test, Pelfrey began the test before being instructed to do so, failed to keep his arms to his side, did not look at his toes as instructed, used his arms for balance, could not hold his foot up from touching the ground, and failed to count to 30. Pelfrey ultimately acknowledged he could not do as instructed, whereupon Officer Bronnenberg terminated the test.

{¶ 9} Based on these observations, Officer Bronnenberg concluded that Pelfrey was impaired and arrested him for OVI. At the Springboro Police Department, Pelfrey

refused a breathalyzer test, stating that "if he took the test he'd be fucked." Officer Bronnenberg then transported Pelfrey to the hospital and subsequently to jail.

{¶ 10} Pelfrey was charged with OVI and failure to control in Case No. 2023TRC002441 and endangering children in Case No. 2023CRB000737. Pelfrey filed motions to suppress in both cases, and the trial court held a suppression hearing on March 5, 2024. On March 19, 2024 Pelfrey filed a closing argument brief, and the State filed a response on March 26, 2024. On April 15, 2024, the trial court denied Pelfrey's motions. On November 4, 2024, Pelfrey filed a motion to reconsider his motion to suppress in his OVI and failure to control case, and the court denied his motion on November 5, 2024. The cases proceeded to trial on November 8, 2024, and Pelfrey was found guilty on all counts.

{¶ 11} The trial court sentenced Pelfrey to 180 days in jail, with 150 days suspended, one year of probation with the condition that he participate in a drug and alcohol assessment and any follow-up, a one-year license suspension, and a fine of $500.

{¶ 12} Pelfrey now timely appeals, raising one assignment of error for our review.

**II. Legal Analysis**

{¶ 13} Assignment of Error:

{¶ 14} THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE.

{¶ 15} In his single assignment of error, Pelfrey argues (1) the police did not have reasonable suspicion to detain him and conduct field sobriety tests, (2) his statements made after his arrest should be suppressed because he was not provided a *Miranda* warning, (3) the field sobriety tests were inadmissible as evidence because they did not substantially comply with the NHTSA guidelines, and (4) the police did not have probable cause to arrest him for OVI.

{¶ 16} Appellate review of a trial court's decision to grant or deny a motion to suppress is a mixed question of law and fact. *State v. Bell*, 2009-Ohio-2335, ¶ 8 (12th Dist.). Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *State v. Harsh*, 2014-Ohio-251, ¶ 9 (12th Dist.). Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 2013-Ohio-4764, ¶ 14 (12th Dist.). "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id.*

*Reasonable Suspicion to Conduct Field Sobriety Tests*

{¶ 17} "[A] police officer must have a reasonable suspicion of criminal activity to support administering field sobriety tests." *State v. Koogler*, 2010-Ohio-5531, ¶ 7. "Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together, with rational inferences from those facts, reasonably warrant the intrusion." *State v. Hill*, 2015-Ohio-4655 at ¶ 10 (12th Dist.), citing *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988). Reasonable and articulable suspicion is verified by evaluating the totality of the circumstances "through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Asbury*, 2021-Ohio-2877, ¶ 15 (12th Dist.), quoting *State v. Popp*, 2011-Ohio-791, ¶ 13 (12th Dist.).

{¶ 18} "The usual physical characteristics of alcohol consumption, such as the odor of alcohol, bloodshot eyes, flushed face, and slurred speech are sufficient to give rise to a reasonable suspicion of intoxication." *State v. Lucking*, 2004-Ohio-90, ¶ 9 (12th Dist.). Other factors, such as the time and location of the stop, erratic driving, diminished coordination, demeanor of the driver, and admission of alcohol consumption are also

relevant for consideration. *Asbury* at ¶ 16. While several indicia of intoxication may be necessary, not every factor must be present before a suspicion of intoxication is reasonable. *Id.* Further, while there may be non-impairment reasons for a defendant's eyes to be bloodshot or glassy, this does not diminish the relevance of these factors for the question of whether the officer reasonably suspected the defendant was intoxicated. *Id.*, citing *Koogler* at ¶ 16.

{¶ 19} Here, there were numerous indicators that, taken together, supported Officer Hall's reasonable suspicion that Pelfrey was intoxicated. Officer Hall arrived at the scene of a single-vehicle accident, on a straight road, on Christmas evening. As Officer Hall approached the scene, a bystander informed him that the driver, Pelfrey, was "very drunk," had been driving erratically, and had cut her off while she was driving on the same road. [1] Upon initial contact with Pelfrey, Officer Hall smelled a strong odor of an alcoholic beverage coming from Pelfrey. Pelfrey disregarded the officer's instructions not to climb into the wrecked vehicle, grabbed at Officer Hall's flashlight, and later fell on the embankment along the side of the road. Therefore, the totality of the circumstances gave Officer Hall reasonable suspicion to believe Pelfrey was intoxicated which supported the administration of field sobriety tests.

{¶ 20} When Officer Bronnenberg arrived at the scene and administered the field sobriety tests, he independently smelled the odor of an alcoholic beverage on Pelfrey, observed that Pelfrey had glassy eyes, and heard Pelfrey admit that he had "[t]wo shots or a couple" to drink. Further, Officer Bronnenberg was able to rely on Officer Hall's

---

1. In his reply brief and oral argument, Pelfrey argues the bystander's statement is unreliable because she is unnamed in the record. Nevertheless, "information from an unidentified citizen informant who initiates face-to-face public contact with the police to report criminal activity then occurring, with no attempt to conceal his identity" may support an officer's reasonable suspicion. *State v. Tidwell*, 2021-Ohio-2072, ¶ 42. Face-to-face contact allows an officer to personally observe the informant's demeanor and evaluate his veracity. *Id.* We find Officer Hall reasonably relied on the bystander's statement, made contemporaneously with the alleged crime, in conjunction with his own observation of Pelfrey.

reasonable suspicion that Pelfrey was intoxicated. *See City of Maumee v. Weisner*, 87 Ohio St. 3d 295, 297. "[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Id*., quoting *United States v. Hensley*, 469 U.S. 221, 231 (1985). Accordingly, Officer Bronnenberg had reasonable suspicion of intoxication to justify administering field sobriety tests to Pelfrey.

*Admissibility of Post-Arrest Statements*

{¶ 21} For the first time on appeal, Pelfrey argues that he was immediately detained as soon as the police arrived at the scene of the accident and was effectively under arrest; therefore, *Miranda* warnings were required before the police asked him whether he had been drinking, and before the police asked questions in preparation for the field-sobriety tests. However, Pelfrey's motion to suppress only generally asserted that any custodial statements he made without *Miranda* warnings were inadmissible. At the suppression hearing, the defense only cross-examined Officer Bronnenberg regarding Pelfrey's statements after he was formally arrested, and the defense's closing argument brief only addressed Pelfrey's custodial statements regarding his refusal to submit to a breathalyzer test at the Springboro Police Department. Pursuant to Crim.R. 47, a defendant seeking to suppress evidence must state "with particularity the legal and factual issues to be resolved" so the prosecutor and court have "notice of those issues to be heard and decided by the court[.]" *State v. Shindler*, 70 Ohio St.3d 54, 56-58 (1994). Pelfrey may not identify challenged statements for the first time on appeal, namely all his statements at the scene of the accident prior to his formal arrest. *See State v. Kelsey*, 2024-Ohio-806, ¶ 32 (6th Dist.). Therefore, we decline to consider whether Pelfrey was effectively under arrest prior to Officer Bronnenberg formally placing him under arrest,

and we only review the admissibility of Pelfrey's statements made thereafter.

{¶ 22} The issuance of *Miranda* warnings is only required when police subject a person to custodial interrogation. *State v. Frost*, 2019-Ohio-3540, ¶ 32 (12th Dist.). An interrogation includes express questioning as well as any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Id*.

{¶ 23} After Pelfrey's arrest, during transport to the police station, Pelfrey volunteered several statements about drinking and how much he had consumed. Upon review of the cruiser video recordings, we find that Officer Bronnenberg was not interrogating Pelfrey nor was the conversation designed to elicit an incriminating response. At the Springboro Police Department, Officer Bronnenberg read Pelfrey the BMV 2225 form detailing the administrative license suspension and the consequences of refusing to submit to a breathalyzer, and then asked Pelfrey if he would take the breathalyzer test. Pelfrey then volunteered, "If I take the test, I'm gonna get fucked." Officer Bronnenberg was not attempting to elicit any incriminating response, he was only trying to determine whether Pelfrey would take the breathalyzer test. *See Middleburg Hts. v. Henniger,* 2006-Ohio-3715, ¶ 15 (8th Dist.) (*Miranda* warnings need not precede administration of a breathalyzer test because such a test is intended to develop physical and not testimonial evidence).

{¶ 24} Accordingly, we find that Pelfrey was not subjected to custodial interrogation and any of his custodial statements were voluntary, therefore no *Miranda* warning was necessary and these statements were admissible.

*Admissibility of the Field Sobriety Tests*

{¶ 25} Pelfrey argues that each of the field sobriety tests were inadmissible both for purposes of finding probable cause to arrest and for use at trial because they were not

conducted in substantial compliance with the applicable NHTSA standards.

{¶ 26} In response to a motion to suppress regarding field sobriety tests, the State must show the requisite level of compliance with accepted testing standards. *State v. Johnson*, 2018-Ohio-3621, ¶ 11 (12th Dist.), citing *State v. Schmitt*, 2004-Ohio-37, ¶ 9. The typical standards, as were used in this case, are those from NHTSA. *State v. Jimenez*, 2007-Ohio-1658, ¶ 12 (12th Dist.). For field sobriety testing evidence to be admissible, the State is not required to show strict compliance with testing standards, but must instead demonstrate by clear and convincing evidence that the officer substantially complied with NHTSA standards. R.C. 4511.19(D)(4)(b); *State v. Selvage*, 2012-Ohio-2149, ¶ 12 (12th Dist.). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, (1954). "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v. Fink*, 2009-Ohio-3538, ¶ 26 (12th Dist.).

{¶ 27} As an initial matter, the State asserts Pelfrey only raised a general challenge to the field sobriety tests in his motion to suppress; therefore, the State was only required to demonstrate substantial compliance with NHTSA standards in general terms.

{¶ 28} The extent of the State's burden for establishing substantial compliance "only extends to the level with which the defendant takes issue with the legality of the test." *State v. Nicholson*, 2004-Ohio-6666, ¶ 10 (12th Dist.). If the defendant's motion to suppress raises issues in general terms, then the State is only required to show substantial compliance in general terms. *Johnson* at ¶ 14. The State's burden to show compliance to a general allegation is slight and requires only the amount of specificity contained in the motion. *Id*. Therefore, the State need only "present general testimony that there was compliance" when the motion is not sufficiently specific. *Id*. However, if the

motion to suppress lacks the required particularity, the defendant may still provide some factual basis, either during cross-examination or by conducting formal discovery, thereby raising the requirement on the State to demonstrate substantial compliance with specific evidence. *Id*.

{¶ 29} Here, Pelfrey's motion to suppress contained one boilerplate assertion that Officer Bronnenberg "failed to administer the same [field sobriety tests] in substantial compliance with the applicable standards." The accompanying memorandum of law restated this general assertion without providing any additional information on the issue. Therefore, Pelfrey's motion and memorandum did not set forth the legal and factual bases with sufficient particularity to place the prosecutor on notice of the procedures he intended to challenge. However, Pelfrey's cross-examination of Officer Bronnenberg raised the specificity of the evidence required by the State to meet its burden by asking specific questions whether each of the field sobriety tests was conducted in compliance with the NHTSA standards.

{¶ 30} With respect to the HGN test, the defense specifically inquired as to whether it was possible Pelfrey suffered a head injury in the accident that could have affected the test, and whether the presence of flashing lights from emergency vehicles, the rain, and the wind also could have affected the test. With respect to the walk-and-turn and one-leg-stand tests, the defense also asked specific questions as to whether preexisting medical conditions could have affected Pelfrey's ability to complete the tests, as well as whether the wet road surface diminished the reliability of those tests. Pelfrey emphasized that the NHTSA manual recommends utilizing a dry surface when possible. Therefore, regarding those issues which Pelfrey actually raised, we will address whether the State has set forth specific evidence to demonstrate by clear and convincing evidence substantial

compliance with NHTSA standards.[2]

{¶ 31} As to the HGN test, Officer Bronnenberg testified that Pelfrey did not complain of any injuries from the car accident, with the only apparent injury being a bloody lip. When specifically asked if he was injured at all, Pelfrey responded "[J]ust my pride." Before administering the HGN test, Officer Bronnenberg instructed the emergency vehicles to either move or turn off their lights to not affect Pelfrey's vision. Although the weather conditions were less than ideal, they did not interfere with the test. Officer Bronnenberg testified that the rain was not a "downpour," only a "heavy mist," and that while it might cause someone to squint, the rain did not interfere with the movement of Pelfrey's eyes.

{¶ 32} As to the walk-and-turn and one-leg-stand tests, we find that Pelfrey informed Officer Bronnenberg that he had preexisting issues with his neck that caused tremors or numbness in his arms, but neither of these are among the conditions listed in the NHTSA manual that could affect a subject's ability to perform the test. Further, there is no evidence that the wet pavement affected Pelfrey's performance of these tests. Officer Bronnenberg cleared away any rocks or other obstructions from the roadway before administering the test, and he testified that while the road was wet, there was no puddling.

{¶ 33} The NHTSA manual states that the walk-and-turn and one-leg-stand tests "[w]henever possible . . . should be conducted on a *reasonably* dry, hard, level, and non-slippery surface." (Emphasis added.). A perfectly dry surface is not necessary. Further, the manual notes that "[f]ield validation studies have indicated varying environmental

---

2. Pelfrey also argues for the first time on appeal that the HGN test was incorrectly administered where Officer Bronnenberg checked for all three clues of impairment in one eye before checking the other eye, as opposed to checking both eyes for each clue before looking for the next clue. This issue was not raised in the motion to suppress nor at the suppression hearing on cross-examination; therefore, we decline to address it now.

conditions have not affected a subject's ability to perform" these tests.

{¶ 34} Performing standardized field sobriety tests under less than ideal conditions does not necessarily show that the officer failed to administer the tests in substantial compliance with the NHTSA standards. *State v. Davis*, 2009-Ohio-3759, ¶ 20 (2d Dist.), citing *State v. Marcinko*, 2007-Ohio-1166 (4th Dist.). "To find that the officer must demonstrate that he performed the tests under the ideal conditions set forth in the NHTSA manual would be tantamount to requiring strict, not substantial, compliance." *Davis* at ¶ 20.

*Probable Cause to Arrest*

{¶ 35} Finally, Pelfrey argues that the police did not have probable cause to arrest him for OVI because the field sobriety tests were invalid and the other surrounding facts and circumstances were insufficient to find probable cause. An officer must have probable cause to arrest a person without a warrant. *State v. Zehenni,* 2012-Ohio-5436, ¶ 13 (12th Dist.). "Probable cause to arrest for OVI exists when, at the moment of arrest, the arresting officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, to cause a prudent person to believe the accused was driving under the influence of alcohol." *State v. Pallo*, 2021-Ohio-1984, ¶ 11 (12th Dist.). As discussed above, we have already found the field sobriety tests were validly administered. Therefore, we find that the field sobriety test results, as well as the bystander's statement that Pelfrey was "very drunk" and had been driving erratically, Pelfrey's odor of alcoholic beverage, glassy eyes, demeanor and conduct at scene, and his admission of drinking alcohol, supported probable cause to arrest.

**III. Conclusion**

{¶ 36} After reviewing all the issues raised, we find that the trial court's factual findings are supported by competent, credible evidence and satisfy the legal standards

necessary to uphold its conclusions. Pelfrey's physical condition, conduct, and the bystander's report supported the police's reasonable suspicion that Pelfrey was intoxicated. Officer Bronnenberg's testimony and body cam footage demonstrate by clear and convincing evidence that he substantially complied with NHTSA standards when administering the HGN, walk-and-turn, and one-leg-stand tests. Like the trial court, we find that neither Pelfrey's physical condition nor the environmental conditions undermined the validity of the tests. Accordingly, the field sobriety tests were admissible and provided probable cause to arrest Pelfrey for OVI. Additionally, we find Pelfrey's custodial statements were voluntary and not elicited by interrogation. Thus, the trial court did not err when it denied Pelfrey's motion to suppress evidence.

{¶ 37} Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge


/s/ Robin N. Piper, Judge


/s/ Matthew R. Byrne, Judge