OPINION
{¶ 1} After his motion to suppress evidence was overruled, Bryan Hall entered a plea of no contest to a charge of first degree felony possession of cocaine. Hall was found guilty and sentenced to an agreed upon term of three years.
 {¶ 2} Hall was stopped after a Clayton police officer observed him weaving in the roadway. Based on the officer's observations of Hall's driving, appearance after being stopped, and performance of three field sobriety tests, Hall was arrested for DUI. His car was towed, and, in doing an inventory search prior to the tow, the police found 70 grams of suspected cocaine in the glove compartment.
 {¶ 3} Hall assigns as error the trial court's determination that the police had probable cause to arrest him. (Two other issues raised in the trial court have not been pursued on appeal).
 {¶ 4} As it pertains to this assignment, the trial court's statement of facts (which is amply supported by the suppression hearing evidence) and analysis is as follows:
 {¶ 5} "Facts
 {¶ 6} "On October 7, 2002, Sergeant Steve Caudell of the Clayton Police Department was on patrol in a marked cruiser and in uniform. Caudell had been with the Clayton Police Department for nine (9) years, six (6) of those years as a sergeant. He had experience of making eight to twelve (8-12) DWI arrests per year.
 {¶ 7} "At about 10:03 p.m., Caudell observed a vehicle, later determined to be occupied by the Defendant, at the corner of Old Salem and Taywood Avenues in the City of Clayton. The vehicle went northbound on Taywood Avenue and Caudell pulled in behind it. As the vehicle traveled northbound Caudell observed the vehicle weaving. In the space of two-tenth's to three-tenth's of a mile, the vehicle crossed the lane dividers four (4) times. When asked if `. . . operation of the vehicle constituted bad driving?', Caudell replied, `yes'. The area was described as a residential area with a posted speed of 35 miles an hour and the Defendant's vehicle was within the posted speed limit.
 {¶ 8} "Caudell turned on his lights to stop the vehicle. Although the vehicle had ample opportunity to pull over, it took the vehicle approximately one-tenth of a mile to pull over. Caudell said the driver appeared to be slumped down in the seat and leaning over to the right `a lot', but, he later indicated that this was not unusual and he drew no conclusions from it. In pulling over the vehicle, Caudell indicated his intention was to cite the driver for the marked lane violation, which eventually was done.
 {¶ 9} "* * *
 {¶ 10} "Upon approaching the vehicle, Caudell asked Bryan Hall for his license, registration and proof of insurance, and asked if he had been drinking. The Defendant's eyes were a little red, watery, glassy, and the Defendant's speech was described as being slightly impaired. Bryan Hall said he does not drink and volunteered to take a breathalyser test `right away.' Officer Troy Dexter of the Clayton Police Department arrived for backup. Caudell had testified that he did not smell an odor of alcohol on the Defendant although he indicated he has sinus trouble. Dexter testified that he was within three (3) feet of the Defendant and `absolutely' could smell the odor of alcohol.
 {¶ 11} "Caudell requested that the Defendant submit to field sobriety tests. The first of the tests was the Horizontal Gaze Nystagmus test. In referring to the test, Caudell's independent recollection of the test was uncertain and he needed to refer several times to State Exhibit 7, being a written report he had submitted and signed. Through cross examination it was determined that State Exhibit 7 is a `template' report where the specifics of field sobriety tests are outlined in boilerplate detail and references to a particular defendant, and that defendant's performance, are filled in for that particular offense and offender. Later in his testimony, Caudell explained that the specifics of the test procedure `mirror' the card that officers carry and give as instructions to everyone. However, there was no direct testimony that a card with specific instructions was used for the battery of tests given to the Defendant Bryan Hall.
 {¶ 12} "State Exhibit 7 refers to the three (3) standard Horizontal Gaze Nystagmus tests (smooth pursuit, Nystagmus at maximum deviation, onset of Nystagmus prior to 45 degrees). Although Caudell's report specifically refers to performing Maximum Deviation and Onset Prior to 45 Degree tests, he testified that he did not perform a maximum deviation or onset prior to 45 degree tests. (3:30:40-50 video transcript time counter) The Court determines Caudell only performed the smooth pursuit test.
 {¶ 13} "Caudell asked the Defendant to perform the walk and turn test. Caudell provided verbal instructions, a physical demonstration and received acknowledgment that the Defendant understood the instructions. Caudell testified, and the Court finds, that the walk and turn test was performed consistent with National Highway Traffic Safety Administration (NHTSA) standards. Caudell observed that the Defendant did not keep his steps heel to toe on the first nine (9) step walk, and none of the nine (9) steps on the return walk were heel to toe. The Court notes that the NHTSA Manual for test interpretation of this test lists eight (8) possible `clues.' Test interpretation indicates that if two (2) or more `clues' are present, then the suspects blood alcohol content would be classified as above .10, the legal limit in Ohio. The Court is uncertain whether the failure to keep heel to toe on the outward nine (9) steps and on the inward nine (9) steps is two (2) rather than one (1) `clue.'
 {¶ 14} "Finally, Caudell asked the Defendant to perform the one leg standing test. Caudell explained the procedure, asked about any injuries and demonstrated the test. Caudell testified, and the Court finds, that Caudell conducted the test consistent with NHTSA Manual guidelines. Caudell observed that the Defendant could not complete the test. He could not keep his balance, although the Defendant tried several times, and Caudell stopped the test. Interpretation of this test under the NHTSA Manual is that if an individual fails to complete the one leg stand, there is a good chance that blood alcohol level is above .10.
 {¶ 15} "Based on this training and experience, Caudell was of the opinion that the Defendant was impaired and he was then arrested. After the Defendant was arrested and placed in the police cruiser, a search of the formerly locked glovebox revealed 70 grams of suspected crack cocaine.
 {¶ 16} "* * *
 {¶ 17} "Analysis
 {¶ 18} "* * *
 {¶ 19} "The second area of inquiry is whether the Defendant's physical arrest was constitutional. The stop of the Defendant for a minor traffic violation does not itself justify a physical custodial arrest. Therefore, whether the arrest is proper depends upon whether the officer had probable cause to believe that the Defendant was driving a motor vehicle while under the influence of alcohol or drugs. The officer had observed traffic violations which, he testified constituted `bad driving.' The Defendant's eyes were red, watery, glassy and his speech was slightly impaired. Undoubtedly, the conversation turned to consumption of alcohol and the Defendant volunteered to take a breathalyser `right away.' The Court determines that Caudell reasonably believed that the Defendant was impaired and asked him to proceed with field sobriety tests.
 {¶ 20} "In State v. Homan (2000), 89 Ohio St.3d 421,732 N.E.2d 952, the Ohio Supreme Court held that field sobriety tests must be conducted in strict compliance with NHTSA standards in order to serve as evidence of probable cause to arrest. (See also, State v. Brandenburg (Feb. 22, 2002), Mont. Co. Ct. App. Case #18836, unreported.) In this case, the Court determines that the Horizontal Gaze Nystagmus (HGN) test was not conducted in strict compliance with NHTSA standards because Caudell did not perform the Nystagmus at Maximum Deviation or Onset of Nystagmus Prior 45 Degree Angle tests. There is no indication in the NHTSA Manual that one of the three HGN tests can be isolated from the other two tests. Accordingly, the Horizontal Gaze Nystagmus portion of the test given by Caudell, or the results therefrom, cannot be used to support probable cause to arrest.
 {¶ 21} "Nevertheless, the Court concludes that the Walk and Turn test and the One Leg Standing test conducted by Sergeant Caudell were conducted in strict compliance with the NHTSA Manual and therefore, can be used to support the probable cause question. Although the Court concludes that the Defendant did not necessarily `fail' the Walk and Turn test because the only `clue' observed was failure to keep his feet heel to toe on both the outbound and return series of steps, constituting one (1) NHTSA Manual `clue'. However, this deficient performance is some evidence on the probable question. The NHTSA Manual indicates that if an individual is unable to complete the One Leg Stand, there is a good chance that the blood alcohol content is above .10. Based upon the initial driving of the Defendant, the description of the appearance of the Defendant, the results of the One Leg Standing and Walk and Turn tests, and excluding the Horizontal Gaze Nystagmus test, the Court concludes that Sergeant Caudell had probable cause to place the Defendant under arrest for Driving While Under the Influence of Alcohol."
 {¶ 22} The trial court expressly declined to consider the HGN test in the probable cause equation because Sgt. Caudell had only conducted one part of what is a three part test.
 {¶ 23} Hall claims that the trial court should also have refused to consider the "walk and turn" and "one-legged stand" tests, and that had it done so, Sgt. Caudell's remaining observations would not have provided probable cause to arrest for driving under the influence.
 {¶ 24} Hall's reasons in support of this contention consist of the following: (1) Sgt. Caudell was imprecise in his testimony as to how Hall failed to perform these two tests and as to how he instructed Hall on the one-legged stand test; (2) Sgt. Caudell had very little independent recollection of his instructions to Hall or Hall's performance and was overly dependent on State's Exhibit 7, being Sgt. Caudell's typed statement relating to the field sobriety tests, to refresh his recollection. This was particularly problematic because part of this report is a standardized, pretyped report to which particularized information about a defendant is added; (3) based on the foregoing reasons, the State failed in its burden to prove Homan compliance, i.e., strict compliance with NHTSA requirement for field sobriety testing.
 {¶ 25} We disagree.
 {¶ 26} Sgt. Caudell testified that he had received specialized training for conducting field sobriety tests under NHSTA standards, and that the walk and turn and the one-legged stand tests had been conducted according to those standards. This testimony was not refuted.
 {¶ 27} Hall moved State's Exhibit 7, the written report on the field sobriety tests, into evidence. As it pertains to the two tests in question, the boiler plate appears to consist essentially of the instructions that precede the actual test. Nothing of record suggests that these instructions were not NHTSA compliant.
 {¶ 28} As to the walk and turn test, the report states specifically as to Hall:
 {¶ 29} "During this phase of the test I observed: Hall failed to walk heel-to-toe on the first 9 steps, 3 of the 9 steps were not heel-to-toe. On the return 9 steps, Hall failed to walk heel-to-toe on any of the 9 steps."
 {¶ 30} As to the one-legged stand test, the report states specifically as to Hall:
 {¶ 31} "I observed, that the subject, Hall, was unable to maintain his balance beyond a count of two. Hall attempted to complete the test five different times, and then asked if he could go to the next part of the test. Hall was unable to complete this portion of the test."
 {¶ 32} Although the trial court and the State on appeal refer to a NHTSA Manual, this manual is not part of the record before us. The evidence before us satisfies us that the walk and turn and the one-legged stand test were properly found to have been conducted in strict compliance with NHSTA standards, and that Hall failed to properly perform the one-legged stand test and performed deficiently on the walk and turn test.
 {¶ 33} Sgt. Caudell's imprecise testimony and dependence upon his written report are matters that went to his credibility, and the trial court acted within its discretion in crediting his testimony, particularly absent any refuting evidence. We do not approve of the practice of preparing certain portions of a narrative report in advance of its employment in a particular case. However, Sgt. Caudell did testify that the before-the-fact portion of his report was based on an instruction card that his department uses with all DUI suspects. The manner in which the report was prepared was not necessarily fatal to the State's meeting its burden of proof.
 {¶ 34} The trial court properly determined that Sgt. Caudell's observations of Hall's driving, his appearance after the stop, and his performance on the walk and turn and the one-legged stand tests constituted probable cause to arrest him for driving under the influence.
 {¶ 35} The assignment of error is overruled.
 {¶ 36} The judgment will be affirmed.
Fain, P.J. and Grady, J., concur.