[Cite as *State v. Walker*, 2023-Ohio-3586.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ZANE WALKER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 22 BE 0013

---

Criminal Appeal from the
Belmont County Court, Northern Division, of Belmont County, Ohio
Case No. 21TRC01073N

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor and *Atty. Jacob A. Manning*, Assistant Prosecutor, 52160 National Road, St. Clairsville, Ohio  43950, for Plaintiff-Appellee

*Atty. Adam L. Myser*, Myser & Myser, 320 Howard Street, Bridgeport, Ohio  43912, for Defendant-Appellant.

Dated:  September 28, 2023

---

---

**WAITE, J.**

{¶1}    Appellant Zane Walker pleaded no contest to operating a vehicle while intoxicated ("OVI") after his motion to suppress was overruled.  Appellant now challenges the trial court's decision to overrule his motion to suppress.  He argues on appeal that the arresting officer did not have reasonable suspicion to conduct field sobriety tests, failed to perform the tests properly, and lacked probable cause to arrest Appellant for OVI.  However, the record contains sufficient facts to justify performing the field sobriety tests, supports that the tests were performed in substantial compliance with applicable regulations, and that the arresting officer had probable cause to arrest Appellant.  Appellant's three assignments of error are overruled and the judgment of the trial court is affirmed.

Case History and Facts

{¶2}    On August 7, 2021, Ohio State Highway Patrol Trooper Emily Coakley observed a vehicle being driven by Appellant merge onto Ohio State Route 7 near Bridgeport, Ohio in Belmont County.  Appellant failed to use a turn signal three times when merging, driving on the highway, and when rapidly cutting across three lanes of traffic.  Appellant was also observed swerving erratically within and on the lane markers.  This occurred at approximately 11:00 p.m.  Appellant's driving was recorded on Trooper Coakley's cruiser video camera.  Trooper Coakley stopped Appellant's vehicle immediately after Appellant exited the highway on a left-hand exit and entered a gas station.

{¶3}    When the trooper approached Appellant's vehicle, Appellant rolled his window down about halfway.  He was advised to roll it all the way down.  Trooper Coakley

could smell alcohol coming from the vehicle window. She asked if Appellant had been drinking, and he said no, that only his passenger had been drinking. Appellant said that they had just come from the racetrack.

{¶4} Trooper Coakley asked for Appellant's license, registration, and insurance. Instead of his car registration, Appellant handed over an oil change receipt. Trooper Coakley again asked if Appellant had been drinking, and he said that he had imbibed two beers. She then asked Appellant to exit the vehicle. Trooper Coakley noticed an odor of alcohol coming from Appellant's breath and that Appellant had red watery eyes. At this point, she administered field sobriety tests. Trooper Coakley observed indicators of impairment on three field sobriety tests, and Appellant failed two of the tests. She also conducted a preliminary breath test, then placed Appellant under arrest. Trooper Coakley informed Appellant of his Miranda rights. In inspecting the car, Trooper Coakley found two open beer cans in the vehicle. Appellant subsequently admitted to drinking and driving.

{¶5} The trooper transported Appellant to the Ohio State Highway Patrol post and administered a breath test. The test resulted in a blood alcohol level of 0.135.

{¶6} Appellant was charged with driving with a prohibited concentration of alcohol, third offense, pursuant to R.C. 4511.19(A)(1)(b); failure to use a turn signal, R.C. 4511.39; and traveling with an open container of beer, under R.C. 4301.62(B)(4). On September 21, 2021, Appellant filed a combined motion to dismiss, motion to suppress, and motion in limine. Appellant argued that Coakley lacked probable cause to stop the vehicle, to perform field sobriety tests, and to perform the breath test.

{¶7}   On November 19, 2021, the Belmont County Court, Northern Division, held a hearing on Appellant's motion.  Trooper Coakley testified about following Appellant's vehicle on the highway, his traffic violations, her stop of the vehicle, and the field sobriety tests.  She testified that the stop occurred at 11:00 p.m. and noted that people trying to contain an odor of alcohol often do not roll the window down all the way, thus Appellant's behavior in this regard was suspicious.  She testified that Appellant handed her an oil change receipt instead of his registration and that Appellant ultimately told her that he had consumed two beers.

{¶8}   Trooper Coakley testified that she followed the National Highway Traffic Safety Administration (NHTSA) rules in administering field sobriety tests.  She noted that she was trained to give these tests and performed them nightly.  Trooper Coakley testified that Appellant exhibited six of six indicators of impairment during the horizontal gaze nystagmus (HGN) test.  This indicated a failed HGN test.  The test was performed at the side of the cruiser and was not captured on video, which was directed only towards the front of the cruiser.  She noted that Appellant exhibited two of eight indicators of impairment in the walk and turn test, which was recorded on video.  This reflected that Appellant had failed the test.  She testified that she administered a one-leg stand test and that Appellant exhibited only one of four indicators of impairment, hence, he passed this test.  The video was played at the hearing.

{¶9}   On December 17, 2021, the trial court overruled Appellant's motion in its entirety.  On March 23, 2022, Appellant withdrew his former plea of not guilty and entered a plea of no contest to OVI.  The court then entered judgment against Appellant on one count of OVI, a first degree misdemeanor.  The court sentenced Appellant to 365 days in

jail with all but 185 suspended, a fine in the amount of $1,135, court costs, two years of probation, and an eight-year license suspension. Counts two and three were dismissed. A *nunc pro tunc* entry was filed on March 29, 2022, correcting some typographical errors.

**{¶10}** This appeal was filed on March 24, 2022 and on that same date the trial court stayed the sentence pending appeal. Appellant raises three assignments of error on appeal.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED IN FINDING THE ARRESTING OFFICER HAD REASONABLE SUSPICION TO CONDUCT FURTHER INVESTIGATION AND/OR COMPEL DEFENDANT TO PERFORM FIELD SOBRIETY TESTS AFTER THE INITIAL TRAFFIC STOP.

**{¶11}** Initially, we note that all of Appellant's three assignments of error challenge the trial court's decision to overrule his motion to suppress. Although Appellant pleaded no contest to the charge of OVI, a "plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence." Crim.R. 12(I); *State v. Vaughn*, 7th Dist. Carroll No. 683, 2003-Ohio-7023, ¶ 33. The review of a ruling on a motion to suppress generally presents a mixed question of fact and law. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In a hearing on a motion to suppress, the trial court sits as the trier of fact and is responsible for determining the credibility of the witnesses and weighing the importance of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). A reviewing court should accept

the trial court's findings of fact if they are supported by competent and credible evidence. *Id.* at 20. With respect to the trial court's conclusions of law, however, a court of appeals applies a de novo standard of review and must determine whether the facts satisfy the applicable legal standards. *Burnside* at ¶ 8.

{¶12} Appellant contends in his first assignment of error that Trooper Coakley did not have a sufficient basis for conducting field sobriety tests. It is well-established that once an officer has validly stopped a vehicle for a minor traffic offense, "the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts * * *." *State v. Jennings*, 11th Dist. Trumbull No. 98-T-0196, 2000 WL 263741, *3, citing *State v. Yemma*, Portage App. No 95-P-0156 (Aug. 9, 1996); see also, *State v. Smith*, 7th Dist. Mahoning No. 05 MA 219, 2007-Ohio-3182, ¶ 40. "Probable cause is not needed before an officer may conduct field sobriety tests." *State v. Perkins*, 10th Dist. Franklin No. 07AP-924, 2008-Ohio-5060, ¶ 8.

{¶13} "In evaluating the propriety of an investigative stop, a reviewing court must consider the totality of the circumstances surrounding the stop as 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *Village of Waite Hill v. Popovich*, 11th Dist. Lake No. 2001-L-227, 2003-Ohio-1587, ¶ 11, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶14} Appellant lists ten factors that can be considered by a court in viewing the totality of circumstances when an officer decides to administer field sobriety tests: time and day of the stop; location of the stop; erratic driving before the stop; condition of the

Case No. 22 BE 0013

suspect's eyes; impairment of speech; odor of alcohol; intensity of the odor of alcohol; suspect's demeanor; suspect's lack of coordination; and suspect's admission of alcohol consumption. *State v. Evans*, 127 Ohio App.3d 56, 64, 711 N.E.2d 761, 766 (11th Dist.1998). The list in *Evans* includes one other factor as well: whether there is a report that the driver may be intoxicated. *Id.* at fn. 2. This Court has relied on the *Evans* list. *State v. Reed*, 7th Dist. Belmont No. 05 BE 31, 2006-Ohio-7075, ¶ 11.

{¶15} Appellee points out that *Evans* does not contain an exhaustive list, and that there is no specific number of factors that must be present in order to justify administering field sobriety tests. In *Evans,* five factors were relied upon, two of which were not mentioned by Appellant. *Id.* at 64. Other cases involve even fewer factors in order to justify administration of field sobriety tests. See *State v. Downey*, 37 Ohio App.3d 45, 523 N.E.2d 521 (1987) (traffic violation, odor of alcohol, admission to drinking); *Reed*, *supra* (smell of alcohol, red and glassy eyes, admission of drinking); *State v. Wilson*, 7th Dist. Mahoning No. 01CA241, 2003-Ohio-1070 (erratic driving, odor of alcohol, red and bloodshot eyes, impaired coordination.)

{¶16} Trooper Coakley testified that she relied on several factors in deciding to perform these tests: Appellant's turn signal violations; lane swerving; that he initially opened his window only half-way; the odor of alcohol; the time of night; the place where Appellant had just left (i.e., the racetrack); his admission to drinking two beers; his mistaking the oil change slip for his car registration; and his red, watery eyes. Regarding Appellant's driving, the law in Ohio is that "erratic driving that does not amount to a traffic violation may, nonetheless, support an officer's reasonable suspicion to stop a driver." *State v. Bahen*, 10th Dist. Franklin No. 16AP-65, 2016-Ohio-7012, 76 N.E.3d 438, ¶ 23;

see also *State v. Ratliff*, 12th Dist. Butler No. CA2019-09-163, 2020-Ohio-3315, ¶ 24. The record supports the trooper's testimony that Appellant showed many signs of possible impairment, justifying her administration of field sobriety tests. Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN NOT SUPPRESSING THE RESULTS OF THE FIELD SOBRIETY TESTS.

{¶17} This assignment of error is reviewed under the same suppression of evidence standard earlier discussed. Appellant contends that Trooper Coakley's testimony should not be believed regarding the HGN test, and that he did not exhibit enough clues on the walk and turn test to indicate impairment. Appellant concludes that there were not enough clues of impairment overall to justify his arrest for OVI.

{¶18} "Results from field sobriety tests 'are not admissible at trial unless the state shows by clear and convincing evidence that the officer administered the test in substantial compliance with NHTSA guidelines.' *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 11[.]" *State v. Aiken*, 6th Dist. Fulton No. F-21-005, 2021-Ohio-3503, ¶ 27.

{¶19} Appellant does not question Trooper Coakley's training or her understanding of the NHTSA manual. Appellant did not offer the NHTSA manual into evidence. Appellant did not challenge Trooper Coakley's testimony about the requirements of the HGN test or the walk and turn test. His primary argument is that the video of the traffic stop does not confirm that he exhibited two indicators of impairment

for the walk and turn test, and that this diminishes the trooper's credibility as to the results of both field sobriety tests.

**{¶20}** Trooper Coakley testified about her training and that she conducts these tests nightly on her shifts. She indicated that there are six indicators to look for in the HGN test (three in each eye), that four are needed to determine failure of the test, and that Appellant exhibited all six clues. She testified that there are eight indicators for the walk and turn test, that two are needed to reflect failure of the test, and that Appellant exhibited two. She testified that the indicators Appellant failed in the walk and turn test were swaying during the instructions for the test and turning incorrectly. (11/19/21 Tr., p. 25.)

**{¶21}** Trooper Coakley further testified about the walk and turn test:

I tell them left foot in front of him. He brings that right foot heel to toe, hands down at his sides. I will tell him to stay in that position while I demonstrate. Per NHTSA, it's a clue of while I'm demonstrating, they adjust their feet, move their feet, fall out of it or anything like that trying to maintain that balance, trying to maintain that position.

(11/19/21 Tr., p. 25.)

**{¶22}** It is clear from the video of the test that Appellant did adjust and move his feet after he placed them toe to heel while Coakley was giving her instructions. There are also a few seconds where Appellant's legs are obscured by Coakley walking in front of him, and we cannot observe whether he moves his feet improperly on the video. There

Case No. 22 BE 0013

is certainly nothing in the video to contradict Trooper Coakley's testimony that Appellant moved his feet after placing them heel to toe during the instructions for the test.

{¶23} The video does not show Appellant's feet during the turn of the walk and turn test. His feet are obscured by the trooper's cruiser. Nevertheless, Trooper Coakley testified that she wrote in her report that Appellant turned incorrectly, and that she was convinced of that when she wrote the report. Since the video does not contain a view of Appellant's feet, it neither confirms nor contradicts her testimony that Appellant failed the test.

{¶24} We also observe that the video was taken late at night and it was dark. Thus, it does not contain a perfect record of what actually occurred. Trooper Coakley relied on the report she made the night of the field sobriety tests to confirm that Appellant had indeed exhibited two of the indicators of the test and had therefore failed. A reviewing court may rely on the written report of a field sobriety test to establish that the driver failed one or more of the tests. *State v. Hall*, 2d Dist. Montgomery No. 19933, 2004-Ohio-1307, ¶ 28.

{¶25} The trial court believed Trooper Coakley's testimony and the written report, which were confirmed to a lesser degree by the video of the traffic stop. It is up to the trier of fact to determine witness credibility. Appellant's attack on the HGN test is based on his perception that the trooper's testimony of the walk and turn test is not credible. The record does not reveal any error in the court's determination that Appellant failed the walk and turn test, and there is no reason to question the trooper's testimony regarding the results of the HGN test. This record reveals Appellant failed two field sobriety tests.

Case No. 22 BE 0013

There was no reason to suppress the field sobriety test results. Appellant's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED IN FINDING THAT THE ARRESTING OFFICER HAD PROBABLE CAUSE TO PLACE THE DEFENDANT-APPELLANT UNDER ARREST FOR VIOLATION OF R.C. §4511.19, OVI.

{¶26} This assignment of error is also reviewed under the same suppression of evidence standard as the earlier two assignments. Appellant argues that there was no probable cause to arrest him for OVI once the field sobriety tests are excluded from evidence. Based on our analysis of the first two assignments of error, there is no reason to exclude those test results. Even assuming, arguendo, that the walk and turn test result is excluded, the record shows the trooper still had probable cause for the arrest.

{¶27} Probable cause to arrest someone for OVI may exist without the administration of any field sobriety tests based on the totality of the circumstances. *State v. Bish*, 7th Dist. No. 09 MA 145, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257, ¶ 2; *State v. Brungs*, 4th Dist. Pickaway No. 05CA18, 2005-Ohio-5776, ¶ 31. "Probable cause to arrest does not have to be based upon a suspect's poor performance on field sobriety tests alone. Rather, the totality of the facts and circumstances can support a finding of probable cause to arrest even when no field sobriety tests were given, or when the test results must be excluded because of failure to comply with standardized testing procedures." *State v. Hall*, 2d Dist. Greene No. 04CA86, 2005-Ohio-4526, ¶ 21 (citations omitted).

Case No. 22 BE 0013

**{¶28}** Also, a single field sobriety test result, if administered properly, can be used to support probable cause to arrest for DUI. *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 610, 645 N.E.2d 802 (9th Dist.1994). "[T]he HGN test is a reliable test for determining if a person in [sic] under the influence and can be used to establish probable cause[.]" *Westlake v. Goodman*, 8th Dist. Cuyahoga No. 111300, 2022-Ohio-3045, ¶ 29.

**{¶29}** Probable cause is not a prohibitively high standard. *State v. Taylor*, 10th Dist. No. 19AP-396, 2022-Ohio-2877, 194 N.E.3d 867, ¶ 15. "Probable cause is a flexible common sense standard, and requires only a showing that a probability rather than an actual showing of criminal activity existed." *State v. Osorio*, 8th Dist. Cuyahoga No. 72147, 1998 WL 23829, *4. This helps to explain why there is such a wide range and variation of facts supporting probable cause to arrest for OVI.

**{¶30}** This record contains many indicators that Appellant had probably committed the crime of OVI: erratic driving; Appellant's failure to fully open his window to initially comply with the trooper; his handing over a sales receipt rather than his registration; the odor of alcohol both inside and outside the vehicle; the time of night; that Appellant had just been at the racetrack; Appellant's red, watery eyes; Appellant's admission that he consumed two beers; and Appellant's obvious failure of the HGN test. The record here supports the trial court's decision to overrule Appellant's motion to suppress, and Appellant's third assignment of error is overruled.

## Conclusion

**{¶31}** Appellant argues on appeal that his motion to suppress should have been granted in this OVI case because there were insufficient grounds to administer field sobriety tests, because the video of the tests does not support the conclusion that he

failed the walk and turn test, and because there was no probable cause to arrest him for OVI. Appellant's first assignment of error is without merit because the record contains specific and articulable facts to support the decision to administer field sobriety tests. Appellant's second assignment of error is without merit because the record supports that Appellant failed two field sobriety tests. Appellant's third assignment of error is without merit because there was no basis to suppress any evidence, particularly since there was probable cause to arrest Appellant for OVI based on the totality of circumstances even without the results of the walk and turn test. Accordingly, the judgment of the trial court is affirmed.

Robb, J., concurs.

Hanni, J., dissents with dissenting opinion.

Case No. 22 BE 0013

Hanni, J., dissenting.

{¶32} I respectfully dissent from the majority opinion because I would find there was not reasonable suspicion to conduct the field sobriety tests. Therefore, I would find that the trial court should have granted Appellant's motion to suppress.

{¶33} When an officer stops a motorist for a "minor traffic violation," the officer must keep the stop brief and limit it to the issuance of a citation for the violation in question. *State v. Reed*, 7th Dist. Belmont No. 05 BE 31, 2006-Ohio-7075, ¶ 9, citing *State v. Jennings*, 11th Dist. No. 98-T-0196, 2000 WL 263741 (Mar. 3, 2000). Since any further detention is a greater invasion into the motorist's liberty interests, the officer may not request the motorist to perform field sobriety tests unless the request is separately justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated. *Id.*, citing *State v. Yemma*, 11th Dist. No. 95-P-0156, 1996 WL 495076 (Aug. 9, 1996).

{¶34} In this case, the circumstances relied on in support of reasonable suspicion to conduct the field sobriety tests were turn signal violations, swerving within his lane, an odor of alcohol, the window half-rolled down, the time of night (11:09 p.m.), the place where Appellant was coming from (a race track), and red watery eyes.

{¶35} Numerous appellate courts, including this Court, examining similar circumstances, have declined to find that reasonable, articulable suspicion justified expanding the scope of the traffic stop to conduct field sobriety tests. See *Reed*, 7th Dist. Belmont No. 05 BE 31, 2006-Ohio-7075, (non-moving violation along with a slight smell of alcohol, red glassy eyes, and admission to drinking two beers did not provide the officer with reasonable suspicion that defendant was impaired); *State v. Brickman*, 11th Dist.

Portage No. 2000-P-0058, 2001 WL 635954, (June 8, 2001) (speeding, weaving within the lane, mild odor of alcohol, red/glassy eyes and admission of drinking "a beer" did not constitute reasonable articulable suspicion of driving under the influence); *State v. Swartz*, 2d Dist. Miami No. 2008CA31, 2009-Ohio-902, (left turn without signaling, odor of alcohol on driver's breath, and glassy/bloodshot eyes did not provide reasonable and articulable suspicion of driving under the influence); *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550 (Mar. 24, 2000), (three or four marked lane violations, together with detection of a "slight" odor of an alcoholic beverage, and motorist's admission that he had consumed "a couple" of beers did not provide reasonable suspicion to conduct field sobriety tests).

{¶36} Because I would find that the circumstances in this case did not provide reasonable articulable suspicion of driving under the influence, I would reverse the trial court's judgment overruling Appellant's motion to suppress and remand the matter for further proceedings.

[Cite as *State v. Walker*, 2023-Ohio-3586.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Belmont County Court, Northern Division, of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**