[Cite as *State v. Lopez*, 2024-Ohio-2394.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CRISTIAN P. LOPEZ,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0123**

---

Criminal Appeal from the
Mahoning County Court #2 of Mahoning County, Ohio
Case No. 2023 TR C 01045 BDM

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*, and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Rhonda G. Santha*, for Defendant-Appellant.

Dated:  June 21, 2024

**DICKEY, J.**

{¶1} Appellant, Cristian P. Lopez, appeals the judgment entry of Mahoning County Court #2 overruling his motion to suppress the results of his field sobriety test. After the motion to suppress was overruled, Appellant entered a plea of no contest to the amended count of operating a vehicle after underage alcohol consumption ("OVUAC") in violation of R.C. 4511.19(B)(1), a misdemeanor of the fourth degree.[1] The county court entered a guilty verdict and imposed a jail term of thirty days (with twenty-seven days suspended), a $250 fine, and suspended Appellant's driver's license for one year.

{¶2} Appellant advances two assignments of error. Although Appellant concedes the state trooper had probable cause to initiate the traffic stop based on speed, Appellant argues in his first assignment of error that the trooper did not did not have reasonable suspicion to conduct the field sobriety tests. Second, Appellant asserts the results of the field sobriety tests did not establish probable cause for his arrest.

{¶3} The foregoing case is a matter of first impression here, as it involves the application of the reasonable suspicion and probable cause standards to a driver under the legal drinking age. In Ohio, the minimum prohibited concentration of alcohol is reduced from eight one-hundredths of one percent or gram (.08) to two one-hundredths of one percent or gram (.02) when the driver is under the age of twenty-one. Given the minimal requirement, we adopt the rationale advanced by Ohio intermediate appellate courts in the Third, Fourth, Fifth, Tenth, and Eleventh Districts, that an arresting officer may rely on more subtle evidence of drinking and evidence of only slight impairment of performance when the driver is under the age of twenty-one.

---

[1] R.C. 4511.19(B)(1) reads, in relevant part:

> No person under twenty-one years of age shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply: (1) The person has a concentration of at least two-hundredths of one per cent but less than eight-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood.

**FACTS AND PROCEDURAL HISTORY**

{¶4}     Ohio State Highway Patrolman Charles Hoskin ("Trooper Hoskin") was the sole witness to offer testimony at the suppression hearing on November 6, 2023.  Trooper Hoskin, a twelve-year veteran of the Ohio State Highway Patrol ("OSHP"), underwent National Highway Traffic Safety Administration ("NHTSA") training in 2008, prior to serving for three years as an officer for a local police department, and again in 2012 when he joined the OSHP.

{¶5}     In 2018, Trooper Hoskin became a certified Ohio Peace Officer Training Academy NHTSA instructor following his completion of a forty-hour course through the Academy.  As an NHTSA instructor, Trooper Hoskin regularly taught courses in OVI detection and testing. In his fifteen years of law enforcement, he performed "probably close to a thousand [OVI stops]."   (11/6/23 Suppression Hrg., p 60.)

{¶6}     Trooper Hoskin was on routine patrol on Ohio State Route 224 (near the Shops at Boardman Park) in Boardman, Ohio on May 27, 2023 at 2:30 a.m.  The state asked the trial court to take judicial notice that May 27, 2023 was a "Saturday night," however, Trooper Hoskin's body camera footage time stamp reads "2023-05-27 02:35:35." Consequently, the traffic stop was initiated on a Saturday morning.

{¶7}     Trooper Hoskin was travelling eastbound and observed a vehicle travelling westbound in excess of the posted speed limit. Trooper Hoskin changed direction in order to pursue the vehicle, which he paced at 51 mph.   According to his testimony, Trooper Hoskin activated his overhead lights and initiated a traffic stop because the vehicle was in a 40 mph zone.  According to the citation, Appellant was ticketed for traveling 51 mph in a 35 mph zone.

{¶8}     Trooper Hoskin approached Appellant, who was the sole occupant of the vehicle, and asked for his driver license.  Appellant explained he had no driver license because it had been suspended.  Trooper Hoskin asked, "So why are you driving?" Appellant replied that he had driving privileges.  Then Trooper Hoskin asked for identification, which Appellant was also unable to provide.

{¶9}     Instead, Appellant offered his driving privilege documentation, which he explained was in a book bag on the passenger seat.  As Appellant reached into the book bag, Trooper Hoskin asked Appellant "where [he was] coming from now," and Appellant

replied that he was returning home from work. Trooper Hoskin asked Appellant's place of employment, and Appellant responded "Wendy's." Appellant was wearing a Wendy's t-shirt.

{¶10} Next, Trooper Hoskin asked "what time [Appellant] got off," and Appellant, who was fumbling with paperwork from his book bag, mumbled "uh, just now I got off." Trooper Hoskin asked, "what's that?" Appellant responded, "I just got off right now." Trooper Hoskin asked again, "[w]hat time?" Appellant responded, "around 2:30." Appellant ultimately produced his driving privilege documentation.

{¶11} When Trooper Hoskin asked Appellant the reason for his license suspension, Appellant responded, "physical control." R.C. 4511.194 prohibits physical control of vehicle by an individual while under the influence, and defines "physical control" as "being in the driver's position of the front seat of a vehicle * * * and having possession of the vehicle's * * * ignition key or other ignition device." R.C. 4511.194(A)(2). A violation of R.C. 4511.194 is a misdemeanor of the first degree. R.C. 4511.194(D).

{¶12} Appellant told Trooper Hoskin he was twenty years old. When asked the reason for his speed, Appellant explained he "want[ed] to get home on time." Trooper Hoskin asked Appellant for the vehicle registration, then asked him the amount of alcohol he had consumed that evening. Appellant denied any alcohol consumption.

{¶13} While Appellant searched through the papers in the glove compartment for the vehicle registration, Trooper Hoskin asked the time that Wendy's closed. Appellant explained the restaurant typically closed at 1:00 a.m., but closing requires additional time when the restaurant was busy. Appellant provided the vehicle registration. Next, Trooper Hoskin asked for Appellant's insurance information, but Appellant was only able to provide expired insurance cards.

{¶14} Trooper Hoskin asked if Appellant had been "convicted" of the physical control violation, and Appellant explained he entered a guilty plea to the charge, as he was unaware at the time that it could not be expunged. He denied consuming alcohol a second and third time, before Trooper Hoskin instructed him to exit the vehicle. When Appellant stepped out of the vehicle, his car keys, which he had placed in his lap, fell to the ground. At that point, Trooper Hoskin informed Appellant that the smell of alcohol emanating from the vehicle was the reason for the field test.

Case No. 23 MA 0123

**{¶15}** At the suppression hearing, Trooper Hoskin cited the following factors to demonstrate reasonable suspicion that Appellant was under the influence of alcohol: the time of day, Appellant's age coupled with the odor of an alcoholic beverage emanating from the vehicle, and Appellant's bloodshot eyes. Trooper Hoskin explained he never used an adjective to modify the odor of alcohol in his reports (i.e., "strong," "faint"), as his instructors at the Academy warned against the practice. Trooper Hoskin testified there are several establishments that sell alcoholic beverages located on that section of Route 224 where the arrest occurred. Trooper Hoskin explained the legal limit for OVUAC is .019, but the legal limit for simple alcohol consumption is zero.

**{¶16}** Trooper Hoskin performed three standard field sobriety tests: the horizontal gaze nystagmus ("HGN"), the walk and turn, and the one leg stand. He testified studies performed by NHTSA, before the adult threshold was lowered from .10 to .08, assigned an 88 percent reliability rate to the HGN as a stand-alone test. In addition to the standard tests, Trooper Hoskin performed the vertical nystagmus test.

**{¶17}** Appellant does not challenge Trooper Hoskin's administration of the tests in this appeal. Appellant argues instead that Trooper Hoskin did not have reasonable suspicion to conduct the tests and further that the test results do not establish probable cause for his arrest.

**{¶18}** The HGN is administered to elicit involuntary jerking of the pupil of the eyes. Trooper Hoskin testified that he observed the lack of smooth pursuit and sustained nystagmus at maximum deviation in both eyes, which constitute four of the six validated clues indicating intoxication.

**{¶19}** During the walk-and-turn test, Trooper Hoskin observed two of eight validated clues indicating intoxication. First, Appellant's turn was improper, and second, Appellant raised his arms more than six inches from his legs.

**{¶20}** Finally, during the one leg stand, Trooper Hoskin observed one of the four validated clues indicating intoxication, that is, Appellant swayed during the test. Appellant was required to count forward during the one leg stand, specifically "one thousand one, one thousand two, one thousand three * * *." Appellant ultimately counted up to one thousand twenty-eight before Trooper Hoskin terminated the test. Notably, Appellant repeated "one thousand two" twice.

**{¶21}** At the conclusion of the standard testing, Trooper Hoskin attempted to administer a portable breath test, but Appellant refused to submit to the test. Trooper Hoskin explained he performs a portable breath test in every underage case because the requirement is so low (.02), and the test gives an underage person "an idea of where they're at [sic]." (*Id.*, p. 57.) Based on the field sobriety test results, Appellant was arrested for OVI-refusal in violation of R.C. 4511.19, driving under suspension in violation of R.C. 4510.11, and speeding in violation of R.C. 4511.21.

**{¶22}** On cross-examination, defense counsel questioned Trooper Hoskin regarding the impaired driving section of the NHTSA manual. The NHTSA manual was neither offered nor admitted into evidence at the hearing.

**{¶23}** When asked by defense counsel, Trooper Hoskin agreed the manual divides an impaired driving stop into three phases, that is: (1) vehicle in motion; (2) personal contact; and the (3) field sobriety tests. Defense counsel then divided these categories into sub-phases of (1) vehicle in motion: (1a) vehicle in motion and (1b) vehicle stopping and the (2) personal contact phase: (2a) contact and (2b) exit from vehicle.[2] The manual provides a list of "clues" in each phase in order to assist a law enforcement officer with his or her criminal investigation.

**{¶24}** On cross-examination, defense counsel tallied the number of total clues available to Trooper Hoskin in each phase, including the sub-phases defense counsel referenced, and argued Trooper Hoskin only observed nine out of 80 clues. By defense counsel's own calculation, he first stated there are seven clues in the personal contact exit sub-phase and later says there are ten.[3] Trooper Hoskin conceded the clues he observed were bloodshot eyes, odor of alcohol emanating from the vehicle in which the defendant was the sole occupant, lack of smooth pursuit and sustained nystagmus at maximum deviation in both eyes in the HGN test, turning improper and raising arms more

---

[2] In the absence of the actual NHTSA manual in the record, the court is unable to determine whether these phases are actually broken down into sub-phases in the manual or if defense counsel created sub-phases for his own discussion.

[3] In the absence of the NHTSA manual, the number of total possible clues for the combined three phases cannot be ascertained from the record, although the State did not object to the total calculation of 57.

than six inches from his legs in the walk and turn test, and swaying during the one-leg-stand test.

**{¶25}** Trooper Hoskin testified law enforcement officers investigating suspected impaired driving engage in a technique called "divided attention" in phase two, the personal contact phase. The technique is predicated upon the theory that an impaired driver will be easily distracted.

**{¶26}** Trooper Hoskin asked Appellant questions at the same time Appellant was attempting to locate documents. Although Appellant required a considerable amount of time to find the limited documentation he provided, Trooper Hoskin conceded Appellant ultimately did provide the driving privilege documentation and the vehicle registration, but was unable to produce a valid ID or current insurance information. With regard to answering Trooper Hoskin's questions, it is reasonable to infer Appellant was either confused or intentionally evasive regarding his departure time from work due to his impairment.

**{¶27}** With respect to the field sobriety tests, defense counsel asked Trooper Hoskin, "you're trained that there are about forty other causes of [involuntary jerking of the pupils]," and he responded, "There's other stuff." When defense counsel warranted, "[b]eing tired is one of them." Trooper Hoskin replied, "I'm not sure about being tired." (*Id.* at 53.)

**{¶28}** During re-direct examination, the prosecutor asked Trooper Hoskin, of the roughly one thousand field sobriety tests he had conducted, "how many show you a similar number of clues as you observed in the particular investigation?" Trooper Hoskin responded, "I'm sure I've had some, but I couldn't give you a number." Next, the prosecutor asked, "[w]ith the legal limit for an adult being, what it is, .08, is it likely that if somebody's around that number or slightly thereover [sic], that you're going to see even half of those 57 clues?"[4] Trooper Hoskin replied, "I would have to say, no, but, I mean I guess it depends on their tolerance to the alcohol or drugs." Finally, the prosecutor asked, "With the underage limit of .02, how likely are you to see * * * all these things the defense

---

[4] The state did not object and also references the same number of total clues for all three phases, but again, this Court does not have the NHTSA manual in the record.

was talking to you about [sic]?" Trooper Hoskin responded, "Not very likely." (*Id.*, p. 60-61.)

**{¶29}** In a handwritten judgment entry issued on November 7, 2023, the day after the suppression hearing, the county court opined that OSHP had probable cause to conduct the field sobriety test "due to the odor of alcoholic beverage, blood shot [sic] eyes, the dropping of [Appellant's] keys as well as other potential clues." The county court further opined that OSHP had probable cause to arrest Appellant for OVI "due to his performance on the field sobriety test."

**{¶30}** That same day, following Appellant's plea hearing, the county court entered a separate judgment entry, convicting Appellant of the amended charge and imposing a jail term of thirty days (with twenty-seven days suspended), and a $250 fine. The county court suspended Appellant's driver license for one year. This timely appeal followed.

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT FAILED TO GRANT APPELLANT'S MOTION TO SUPPRESS THE FIELD SOBRIETY TESTS GIVEN TO HIM DURING A TRAFFIC STOP FOR A SPEEDING VIOLATION, IN CONTRAVENTION OF APPELLANT'S FOURTH AMENDMENT RIGHT TO BE FREE OF UNREASOANBLE SEARCHES AND SEIZURES.**

**{¶31}** Appellate review of a ruling on a motion to suppress presents a mixed question of fact and law. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). The appellate court must decide questions of law de novo, without deference to the lower court's legal conclusions. *Burnside* at ¶ 8. Generally, the state bears the burden of proving that a warrantless search or seizure meets Fourth

Amendment standards of reasonableness. *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999-Ohio-68, 720 N.E.2d 507 (1999).[5]

**{¶32}** A law enforcement officer's stop of a motor vehicle constitutes a substantial intrusion, which requires justification as a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). There are two types of valid traffic stops: (1) where police have probable cause that a traffic violation has occurred or was occurring and (2) where police have reasonable articulable suspicion that criminal activity has occurred. *State v. Ward*, 7th Dist. Columbiana No. 10 CO 28, 2011-Ohio-3183, ¶ 35. Appellant does not challenge the initiation of the traffic stop.

**{¶33}** "It is well-established that once an officer has validly stopped a vehicle for a minor traffic offense, 'the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts * * *.'" *State v. Walker*, 7th Dist. Belmont No. 22 BE 0013, 2023-Ohio-3586, ¶ 12, quoting *State v. Jennings*, 11th Dist. Trumbull No. 98-T-0196, 2000 WL 263741, *3. Reasonable suspicion, not probable cause, is required to administer field sobriety tests. *Walker* at ¶ 12.

**{¶34}** Reasonable suspicion requires more than an "inchoate or unparticularized suspicion" but is a lower standard than probable cause. *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 20, quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct.

---

[5] In *State v. Williams*, 7th Dist. Harrison No. 19 HA 0005, 2019-Ohio-5064, we recognized:

> In order to suppress evidence or testimony concerning a warrantless search, a defendant must "raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph one of the syllabus. The defendant is required to set forth the basis for the challenge "only with sufficient particularity to put the prosecution on notice of the nature of the challenge." *State v. Purdy*, 6th Dist. Huron No. H-04-008, 2004-Ohio-7069, at ¶ 15, citing *State v. Shindler*, 70 Ohio St.3d 54, 57-58, 636 N.E.2d 319 (1994). After the defendant sets forth a sufficient basis for a motion to suppress, the burden shifts to the state to demonstrate proper compliance with the regulations involved. *Id.* citing *State v. Johnson*, 137 Ohio App.3d 847, 851, 739 N.E.2d 1249 (12th Dist. 2000).

*Id.* at ¶ 15.

1868, 20 L.Ed.2d 889 (1968). Courts must consider whether the "facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief'" to take the same actions. *Terry* at 22, 88 S.Ct. 1868, quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

{¶35} In *State v. Reed*, 7th Dist. Belmont No. 05 BE 31, 2006-Ohio-7075, we adopted a list of factors first compiled by the Eleventh District that may be considered by a court in viewing the totality of circumstances whether there exists reasonable suspicion to administer a field sobriety test:

> (1) the time of day of the stop (Friday or Saturday night as opposed to, *e.g.,* Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor as described by the officer ('very strong,['] 'strong,' 'moderate,' 'slight,' etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably.

*Id.* at ¶ 11, citing *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761 (1998).

{¶36} We acknowledged in *Walker* that *Evans* does not contain an exhaustive list, and there is no specific number of factors that must be present in order to justify administering field sobriety tests. Further, *Evans* was decided prior to 2003, when the

Ohio General Assembly reduced the standard for intoxication by two-hundredths of one percent by weight per unit volume of alcohol in the person's whole blood (from .10 to .08).

{¶37} In *City of Cleveland v. Machnics*, 984 N.E.2d 1129 (2012), a published opinion by the Cleveland Municipal Court, the municipal court observed the following with respect to the *Evans* factors when applying the reduced .08 standard:

> [I]t is unlikely that a suspect's speech, behavior or coordination will be noticeably impaired. A prohibition to further investigate because only four factors of impairment are shown: bloodshot and glassy eyes, smell of alcohol, and time of day after 2:00 a.m. will probably preclude or hinder enforcement of driving while impaired at the reduced level of alcohol.

*Id.* at 1132.

{¶38} Ohio appellate courts have recognized whether the specific facts of a case provide an officer with reasonable suspicion for conducting field sobriety tests is a "close issue". *State v. Toure*, 5th Dist. No. 2022 CA 00045, 2023-Ohio-2559, ¶ 26, citing *State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶ 16. Such decisions are "very fact-intensive." *Id.* quoting *State v. Burkhart*, 4th Dist. Athens No. 16 CA 0008, 2016-Ohio-7534, ¶ 15.

{¶39} Moreover, Ohio courts often reach opposite conclusions when faced with similar circumstances. Numerous factors may be considered, and small differences between officers' descriptions of an encounter may form the basis for contrasting results. *State v. Pierce*, 5th Dist. Guernsey No. 23CA000028, 2024-Ohio-1560; *State v. Martorana*, 6th Dist. Sandusky No. S-22-011, 2023-Ohio-662, ¶ 34.

{¶40} For instance, in *Walker, supra,* the majority affirmed the decision of the trial court overruling the motion to suppress citing our decision in *State v. Wilson*, 7th Dist. Mahoning No. 01CA241, 2003-Ohio-1070 (officer had reasonable suspicion based on erratic driving, odor of alcohol, red and bloodshot eyes, impaired coordination). The dissent reached the opposite conclusion citing our decision in *Reed, supra*, (non-moving violation along with a slight smell of alcohol, red glassy eyes, and admission to drinking two beers did not provide the officer with reasonable suspicion).

{¶41} Applying the list of factors adopted in in *Reed, supra*, the stop was initiated at 2:35 a.m., early Saturday morning, in a commercial area populated by many establishments that serve alcohol. Although Appellant ultimately claimed that he left work around 2:30 a.m. (after being asked no less than three times by Trooper Hoskin), Appellant conceded that Wendy's closed at 1:00 a.m. Skepticism regarding the alleged one-and-a-half hour delay in Appellant's departure from work is not unreasonable.

{¶42} Trooper Hoskin initiated the traffic stop because Appellant engaged in erratic driving, that is, speeding. Appellant asserted that he was speeding in order to get home "on time," which is inconsistent with his earlier statement that it is not uncommon for closing to take additional time when the restaurant is busy.

{¶43} Appellant's eyes were bloodshot and the odor of alcohol was emanating from an otherwise unoccupied vehicle, which was being operated by an underage driver. Although Appellant's speech was not slurred, he mumbled his responses to Trooper Hoskin's questions, most notably with respect to the time that he departed from work. Although Appellant ultimately provided some of the requested documentation to Trooper Hoskin, Appellant demonstrated notable difficulty in sifting through the material in his book bag and glove compartment.

{¶44} Finally, Appellant did not admit to any alcohol consumption. However, unlike an adult, he could not make such an admission without conceding criminal behavior. All of the foregoing facts, in addition to Trooper Hoskin's previous 12-year experience in dealing with intoxicated drivers, in approximately 1,000 OVI stops, support the conclusion that there existed reasonable suspicion to administer the field sobriety tests.

{¶45} In *State v. Burkhart*, *supra*, the Fourth District was confronted with limited evidence of intoxication of a driver under the age of twenty-one. Similar to the above-captioned appeal, Burkhart was stopped for speed (43 mph in a 25 mph zone), but the trooper immediately noticed her bloodshot and glassy eyes, as well as the strong odor of alcohol emanating from her vehicle. Unique to *Burkhart*, the trooper noted the smell of alcohol on Burkhart's breath when she exited her vehicle. Also unique to *Burkhart*, Burkhart submitted to the chemical test and her blood alcohol content was .160.

{¶46} Burkhart successfully challenged the existence of reasonable suspicion to administer field sobriety tests before the trial court. However, the Fourth District reversed

the trial court's suppression of the blood results based on the rationale first articulated by the Cleveland Municipal Court in *Machnics*:

> Here, Sergeant Davis testified that he very seldom encounters drivers exhibiting overwhelming signs of intoxication, such as "stumbling and falling, falling down." He also testified that most of the drivers he has eventually arrested for OVI present similarly to Appellee. Further, we find the reasoning in *Machnics* to be especially applicable to the present case, as Appellee was under the age of twenty-one. At the time Appellant was arrested for OVI, she was only nineteen years old, well under the legal drinking age of twenty-one. The reasoning in *Machnics* discusses the presumption of intoxication and signs of impairment at the reduced legal limit of .08, as contained in R.C. 4511.19(A)(1)(d). However Appellee, being under age, was subject to the even lower limit of .02, contained in R.C. 4511.19(B)(3).

*Id.* at ¶ 25.

**{¶47}** We agree with the Fourth District that the signs of impairment necessary to demonstrate reasonable suspicion to administer a field sobriety test under the OVUAC .02 limit are considered differently than under the adult standard. Therefore, considering the totality of the circumstances, including the facts adduced at the suppression hearing, Appellant's age, the reduced alcohol content required for OVUAC, and Trooper Hoskin's considerable experience, we find reasonable suspicion existed for the administration of the field sobriety tests in this case. Accordingly, we find the first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

### THE OHIO STATE PATROL TROOPER HAD NO PROBABLE CAUSE TO ARREST APPELLANT FOR A VIOLATION OF R.C. 4511.19 OVI.

**{¶48}** With respect to probable cause to arrest, Appellant argues the involuntary jerking of his pupils was not captured on video due to the position of Trooper Hoskin's

arm, and Trooper Hoskin witnessed no driving impairment, no odor of alcohol on Appellant's person or breath, no divided attention issue, and no evidence of difficulty exiting the vehicle.

**{¶49}** The standard for determining whether there exists probable cause to arrest for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257, ¶ 47 (7th Dist.), citing *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000) (superseded by statute on other grounds as stated in R.C. 4511.19(D)(4)(b)). That determination is based on the totality of the facts and circumstances surrounding the arrest. *Id.* Whether or not there is probable cause for arrest is a legal issue that is reviewed de novo. *Bish, supra,* at ¶ 47.

**{¶50}** Last year, in *Walker*, *supra*, we provided the following analysis of the probable cause necessary for an OVI arrest:

> Probable cause to arrest someone for OVI may exist without the administration of any field sobriety tests based on the totality of the circumstances. *State v. Bish*, 7th Dist. No. 09 MA 145, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257, ¶ 2; *State v. Brungs*, 4th Dist. Pickaway No. 05CA18, 2005-Ohio-5776, ¶ 31. "Probable cause to arrest does not have to be based upon a suspect's poor performance on field sobriety tests alone. Rather, the totality of the facts and circumstances can support a finding of probable cause to arrest even when no field sobriety tests were given, or when the test results must be excluded because of failure to comply with standardized testing procedures." *State v. Hall*, 2d Dist. Greene No. 04CA86, 2005-Ohio-4526, ¶ 21 (citations omitted).

> Also, a single field sobriety test result, if administered properly, can be used to support probable cause to arrest for DUI. *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 610, 645 N.E.2d 802 (9th Dist.1994). "[T]he HGN test is a reliable test for determining if a person in [sic] under the influence and can

be used to establish probable cause[.]" *Westlake v. Goodman*, 8th Dist. Cuyahoga No. 111300, 2022-Ohio-3045, ¶ 29.

Probable cause is not a prohibitively high standard. *State v. Taylor*, 10th Dist. No. 19AP-396, 2022-Ohio-2877, 194 N.E.3d 867, ¶ 15. "Probable cause is a flexible common sense standard, and requires only a showing that a probability rather than an actual showing of criminal activity existed." *State v. Osorio*, 8th Dist. Cuyahoga No. 72147, 1998 WL 23829, *4. This helps to explain why there is such a wide range and variation of facts supporting probable cause to arrest for OVI.

*Id.* at ¶ 27-29.

{¶51} In *State v. Stidham* (Mar. 27, 1998), 3d Dist. Logan No. 8-97-34, 1998 Ohio App. LEXIS 1527, 1998 WL 135800, the Third District upheld the arrest of a 20-year-old driver who smelled of alcohol, had bloodshot eyes, admitted he had been drinking, and had swerved while driving. With respect to probable cause to arrest, the Third District articulated the following rationale, which has been adopted by the Fourth, Fifth, Tenth, and Eleventh Districts:

[B]ecause the prohibited amount of blood alcohol in an underage driver is so minimal, an arresting officer must look for more subtle evidence of drinking, and evidence of only very slight impairment of performance. Accordingly, we agree with the trial court's conclusion that an officer must look for less obvious indicators of alcohol consumption when assessing an underage drinking driver, but not because there is a 'different' or 'lesser' probable cause standard to satisfy.  Rather, we believe that the indicators of two hundredths of a gram by weight of alcohol per two hundred ten liters of breath are more subtle than the indicators of one tenth of a gram by weight of alcohol per two hundred ten liters of breath. *See* R.C. 4511.19(A)(3); [R.C. 4511.19(B)(2).] Thus, the facts which constitute probable cause to arrest an underage driver are different from the facts necessary to constitute probable cause to arrest an adult driver.

*Id.* at *5-6; *see also* V*illage of Kirtland Hills v. Fuhrman*, 11th Dist. Lake No. 2007-L-151, 2008-Ohio-2123, at ¶ 15; *Columbus v. Weber*, 10th Dist. Franklin No. 06AP-845, 2007-Ohio-5446, at ¶ 12; *State v. Knight*, 5th Dist. Stark No.2005-CA-140, 2005-Ohio-6951, at ¶ 28; and *State v. Gibson* (Mar. 17, 2000), 4th Dist. Ross No. 99CA2516, 2000 Ohio App. LEXIS 1197, at *10, 2000 WL 303134 (all citing *Stidham*).

**{¶52}** Based on the totality of the circumstances, we find that probable cause existed for Appellant's arrest for OVUAC. Defense counsel argued that Trooper Hoskin observed a scant number of clues establishing intoxication. However, given the .02 alcohol content requirement, and the facts established by Trooper Hoskin's testimony, we conclude there was probable cause for Appellant's arrest.

## CONCLUSION

**{¶53}** For the foregoing reasons, the judgment entry overruling the motion to suppress Appellant's field sobriety tests is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 23 MA 0123

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Mahoning County Court #2 of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**